[S. F. No. 3087.  In Bank.—July 11, 1905.]

FRANK H. GARDINER, and AH LOY, Copartners, Respondents, v. JAMES McDONOGH, JR., and ALBERT J. RUNYON, Appellants.

SALES — WRITTEN CONTRACT — DESCRIPTION OF PROPERTY — PAROL EVIDENCE—SALE BY SAMPLE.—A written contract for the sale of "500 sax Bayo more or less at $3.50 per 100; 500 sax peas more or less at $2.95 per 100; 250 sax pinks more or less at $2.70 per 100," cannot be varied by parol evidence that the sale was by sample. [Shaw, J., Van Dyke, J., and McFarland, J., dissenting.]

ID.—COMPLETENESS OF CONTRACT—QUESTION OF LAW.—Whether an agreement contains language importing a complete contract is a question of law for the court.

ID.—TIME AND PLACE OF DELIVERY NOT EXPRESSED—CODE PROVISIONS APPLICABLE.—The fact that the agreement does not specify a time and place of delivery does not make it a mere memorandum of an incomplete contract.  When not expressed the time and place of delivery are to be determined by the provisions of sections 1753 and 1754 of the Civil Code.

ID.—PAROL EVIDENCE TO IDENTIFY SUBJECT-MATTER.—Parol evidence is always admissible to identify the subject-matter of a contract; and parol evidence was admissible to show that "Bayo," "peas," and "pinks" meant different varieties of beans, and that the expression "per 100" meant per one hundred pounds.

ID.—SALE BY SAMPLE—REJECTION OF ALL GOODS—TITLE NOT PASSED—SUBSEQUENT PURCHASER NOT PROTECTED—WAIVER OF RIGHT TO SEVER DISTINCT LOTS.—Where goods may be shown to have been sold by sample, and all goods are rejected because some of them do not conform to sample, the title does not pass to any of them, and a subsequent purchaser of part of the goods from the vendee is not protected, though they conform to sample.  The right to insist that distinct lots of goods of different prices are severable was waived by the rejection of the whole for nonconformity of one lot to sample, and could not afterward be insisted upon.

ID.—SALE BY DESCRIPTION—PASSAGE OF TITLE—RESCISSION—POSSESSION UNCHANGED—COLORABLE OWNERSHIP—BONA FIDE PURCHASER PROTECTED.—Where the sale is by description, and a sale by sample is inadmissible, the title passes upon delivery, and notwithstanding a mutual rescission of the contract revests the title in the vendor, yet where the possession is unchanged and a colorable ownership is left in the vendee, a subsequent *bona fide* purchaser from such vendee, without notice of the rescission, is protected against the first vendor.

ID.—CLAIM AND DELIVERY — PREJUDICIAL ERROR — INADMISSIBLE EVIDENCE—ERRONEOUS INSTRUCTIONS.—In an action of claim and

delivery by the first vendor against such *bona fide* purchaser, where the original sale was by description and not by sample, it was prejudicial error to admit evidence of a sale by sample and to instruct the jury upon that theory.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. William R. Daingerfield, Judge.

The facts are stated in the opinion of the court.

Gunnison, Booth & Bartnett, and W. J. Bartnett, for Appellants.

The title passed to the D. E. Allison Company by unconditional delivery to the carrier to their order as consignees. (1 Mechem on Sales, sec. 736, note; Benjamin on Sales, 6th ed. (Bennett), p. 668; *Robinson* v. *Pogue,* 86 Ala. 257, 5 South. 685.) There was no warranty of quality, and evidence of a sale by sample was not admissible. (Benjamin on Sales, sec. 650; *Harmon* v. *Groves,* 11 Com. B. 667; *Meyer* v. *Everth,* 4 Camp. 22; *Gardiner* v. *Gray,* 4 Camp. 144; *Harrison* v. *McCormick,* 89 Cal. 327, 23 Am. St. Rep. 469, 26 Pac. 830; *Thompson* v. *Libby,* 34 Minn. 374, 26 N. W. 1; *Wiener* v. *Whipple,* 43 Wis. 298, 40 Am. Rep. 775.) The mutual rescission agreed upon was not effected as against the defendant, for want of a change of possession. (*Quincy* v. *Tilton,* 5 Me. 277; *Miller* v. *Smith,* 1 Mason (C. C.) 437, Fed. Cas. No. 9590; *State* v. *Intoxicating Liquors,* 61 Me. 520; *Freeman* v. *Deming,* 3 Sandf. Ch. 331.) Parol evidence was admissible to identify the subject-matter of the contract and explain the meaning of abbreviations used. (Benjamin on Sales, sec. 213; *Spicer* v. *Cooper,* 1 Gale & D. 52; *Harmon* v. *Groves,* 16 Com. B. 667; *Salmon Falls Mfg. Co.* v. *Goddard,* 14 How. 446; *Butler* v. *Thompson,* 92 U. S. 412; *Colt* v. *Cone,* 107 Mass. 285, 289; *Ontario etc. Co.* v. *Cutting etc. Co.,* 134 Cal. 21, 25, 86 Am. St. Rep. 231, 66 Pac. 28; *Higgins* v. *California Petroleum Co.,* 120 Cal. 629, 52 Pac. 1080.)

Frohman & Jacobs, and W. E. Creed, for Respondents.

The memorandum not being complete in its terms, a sale by sample could be shown, and thus an implied warranty, giving a right of rejection, and upon rejection the title did

not pass. (Benjamin on Sales, secs. 203, 205, 209, 895, Am. note to Bennett's 6th ed., p. 208; Mechem on Sales, secs. 746, 811, 1212; 24 Am. & Eng. Ency. of Law, 2d ed., 1062; Civ. Code, sec. 1785; *Fisher* v. *Andrews,* 94 Md. 46, 50 Atl. 407; *Pope* v. *Allish,* 115 U. S. 363, 6 Sup. Ct. 69; *Barton* v. *Kane,* 17 Wis. 38-44, 84 Am. Dec. 728; *Conrad* v. *Dater,* 2 Biss. 342, Fed. Cas. No. 3127; *Aultman etc. Co.* v. *Clifford,* 55 Minn. 159, 43 Am. St. Rep. 478, 46 N. W. 593; *Morse* v. *Morse,* 83 Me. 473, 23 Am. St. Rep. 783, 22 Atl. 362; *Fogle* v. *Brubaker,* 122 Pa. St. 7, 15 Atl. 692; *Filley* v. *Pope,* 115 U. S. 213-219, 6 Sup. Ct. 19; *Taylor* v. *Saxe,* 134 N. Y. 67, 31 N. E. 258; *Norrington* v. *Wright,* 115 U. S. 203, 6 Sup. Ct. 12; *Grimoldby* v. *Wells,* (L. R.) 10 C. P. Cas. 391.) The contract having been rescinded, the Allison Company could not renew it with consent of plaintiffs. (Civ. Code, sec. 3512; *American White Bronze Co.* v. *Gillette,* 88 Mich. 231, 24 Am. St. Rep. 286, 50 N. W. 136; *Kinney* v. *Kiernan,* 49 N. Y. 164; *Lassen* v. *Mitchell,* 41 Ill. 101.) The defendants were not *bona fide* purchasers, not having paid the purchase money before notice of plaintiff's title. (*Eversdon* v. *Mayhew,* 65 Cal. 163-167, 3 Pac. 641; *Davis* v. *Ward,* 109 Cal. 186, 50 Am. St. Rep. 29, 41 Pac. 1010; *Bank of Ukiah* v. *Gibson,* 109 Cal. 197, 41 Pac. 1008; *Matson* v. *Melchor,* 42 Mich. 477, 4 N. W. 200; *Wormley* v. *Wormley,* 8 Wheat, 449; *Lytle* v. *Town of Lansing,* 147 U. S. 59, 13 Sup. Ct. 254; *Greenlee* v. *Marquis,* 49 Mo. App. 290; *Fluegel* v. *Henschel,* 7 N. Dak. 276, 66 Am. St. Rep. 642, 74 N. W. 996; *Rush* v. *Mitchell,* 71 Iowa, 333, 32 N. W. 367; *Kitteridge* v. *Chapman,* 36 Iowa, 348; *Harrington* v. *Johnson,* 7 Colo. App. 483, 44 Pac. 368.) One can convey no greater title than he has. (Mechem on Sales, sec. 154; *Smith* v. *Clews,* 114 N. Y. 190, 11 Am. St. Rep. 627, 21 N. E. 160; *Alexander* v. *Swackhamer,* 105 Ind. 81, 55 Am. Rep. 180, 4 N. E. 433; *Coles* v. *Clark,* 3 Cush. 399; *Hoffman* v. *Carow,* 20 Wend. 21; *Williams* v. *Merle,* 11 Wend. 80, 25 Am. Dec. 604, and note; *Spring* v. *Coffin,* 10 Mass. 31.)

LORIGAN, J.—This is an action in claim and delivery to recover possession of a lot of beans. The verdict and judgment were for plaintiffs, and defendants appeal from an order denying their motion for a new trial.

The only points necessary to be considered on this appeal are alleged errors in the admission of evidence and in instructions given to the jury on behalf of plaintiffs.

The undisputed evidence in the case tended to prove the following facts: The D. E. Allison Company was a commission house engaged in business in the city and county of San Francisco, buying and selling produce on its own account, and also receiving and selling it on commission. On December 7, 1899, the following contract of sale was made by that firm and delivered to the plaintiffs:—

"We have this day bought from Loy & Gardiner 500 sax Bayo more or less at $3.50 per 100; 500 sax peas more or less at $2.95 per 100; 350 sax pinks more or less at $2.70 per 100; net on bank of river.

"(Signed) THE D. E. ALLISON COMPANY.  D. E. A. Jr.
"Dated December 7th, 1899."

At that time the beans, which were the articles referred to in the memorandum, were on the farm of the plaintiffs in Solano County. They were shipped by the plaintiffs, in pursuance of the contract of sale, by boat to San Francisco, consigned to the D. E. Allison Company, and were delivered to the California Transportation Company, a wharfinger at San Francisco, on December 12th, for the Allison Company. The particular beans involved in this suit are those designated in the memorandum as "500 sax Bayo more or less." The "peas" mentioned were in fact white beans, and the "pinks" were pink beans. The plaintiff Gardiner was a real-estate broker in San Francisco. Ah Loy was a Chinaman engaged in farming the plaintiff's land in Solano County on shares. The contract of sale was made between Gardiner and D. E. Allison, Jr., as agent for the D. E. Allison Company. When the beans arrived in San Francisco the Allison Company objected to taking them under the agreement of sale on the ground that the "pea" beans mentioned were not equal to a sample which, it seems, had been given to the company by the plaintiffs prior to the sale. Some controversy ensued, the result of which was that the D. E. Allison Company refused to take any of the beans, placing its refusal on the ground that the "pea" beans were not equal to the sample. The plaintiffs acquiesced in this claim and in the rejection of all

the beans. The agreement of sale was declared at an end, the samples, three in number, one for each kind of beans, which had been given by plaintiffs to the Allison Company, were returned to Gardiner for the plaintiffs, the charges for freight and the public weigher's charges for weighing the entire lot of beans, which the Allison Company had paid, were charged back by that company to the plaintiffs, there being an unsettled account between them relative to another lot of beans, with a balance in favor of plaintiffs. Gardiner, considering the beans as then the property of plaintiffs, took the samples, obtained the public weigher's statement of the weights, announced his intention of selling the beans himself, and went out among the produce dealers in the city, endeavoring to sell them to other parties. At this time the beans were on the wharf in the actual possession of the California Transportation Company, to whom they had been delivered by the steamer for the consignee, the D. E. Allison Company, and subject to the consignee's order. No order or direction was given to the wharfinger to deliver them to the plaintiffs. This matter was finally concluded on December 18th. The next day the D. E. Allison Company sold and delivered to the defendants the "Bayo" beans here involved, at the price of three cents a pound. In the afternoon of the same day the defendants gave the Allison Company a check for the price of the beans, and the defendants immediately took possession of them. The check was not presented for payment nor negotiated by the Allison Company until after ten o'clock of the following day, December 20th. The plaintiffs were informed of this sale on the afternoon of the 19th. On the morning of the 20th, some time after nine o'clock, the plaintiffs informed defendants that the beans belonged to the plaintiffs, and asked them to stop payment on the check to the Allison Company. Defendants refused to do this, or to make any attempt to do so, and claimed that the beans were their property by reason of their purchase from the Allison Company, regardless of the claims or rights of the plaintiffs, and they now claim to be purchasers in good faith. There was also evidence admitted over the objection of defendants to the effect that the sale by the plaintiffs to the Allison Company was a sale by sample, the samples having been delivered to the Allison Company at or before the time of making the agreement.

The Allison Company became inslovent, at least, on December 20th.

In proof of the foregoing facts there was no dispute in the evidence, although much of it was admitted over the objections of defendants, which admission is assigned as error, and will be considered presently.

As to all that occurred when Gardiner visited the place of business of defendants and asked them to stop the payment of the check there is a conflict in the evidence, Gardiner testifying that he offered to pay defendants for any expense they would be put to in stopping payment of the check given to the Allison Company, and that if defendants lost anything plaintiffs would make it good and pay them whatever their profit from the purchase might be. This was denied by defendants.

We mention this conflict because it has a bearing upon the correctness of an instruction to the jury, which is one of the points presented for consideration on this appeal. The Allison Company claimed, also, while conceding that they had rejected all the beans as early as December 18th, and the rejection had been acquiesced in by plaintiffs, that the company had arranged with Gardiner by telephonic communication to take the "Bayo" beans on December 19th, the day they sold them to defendants. This agreement, however, was denied by plaintiffs.

1. The first point urged by appellants is, that the lower court erred in permitting the plaintiffs to show by parol evidence that there was a sale by sample of the beans in question. It is insisted that the contract of sale on its face was complete and perfect; that its terms did not mention anything about a sale by sample, and that those terms could not be varied by parol evidence on that subject; that the admission of such evidence was violative of the provision of section 1856 of the Code of Civil Procedure, which declares in effect that when an agreement has been reduced to writing by the parties it is to be conclusively deemed to contain all the terms agreed on, and that no evidence of the agreement other than the writing can be given, except in cases of mistake or imperfection, put in issue by the pleadings, and that the admission of such evidence in the case at bar was in direct conflict with the decision of this court in *Harrison* v. *McCormick*, 89 Cal. 327, ?23 Am. St. Rep. 469, 26 Pac. 830].

We are satisfied that the admission of this evidence for the purpose of showing that the sale was a sale by sample cannot be sustained. In support of the ruling of the lower court it is contended that the agreement does not contain a complete embodiment of the terms of the sale, but was a mere informal memorandum which upon its face showed that it was not intended to embrace all the terms of the contract. We do not so consider it. Whether an agreement contains language importing a complete contract is a question of law for the court, and is to be determined from an inspection of the face of the agreement. In the case of *Harrison* v. *McCormick,* this court quotes approvingly from *Thompson* v. *Libby,* 34 Minn. 377, [26 N. W. 1]: "If it imports on its face to be a complete expression of the whole agreement—that is, contains such language as imports a complete legal obligation—it is to be presumed that the parties have introduced into it every material item and term; and parol evidence cannot be admitted to add another term to the agreement, although the writing contains nothing on the particular one to which the parol evidence is directed." But it is insisted by respondents that it is apparent from the face of the agreement in question that it was only intended to be an informal memorandum, because it fails to state the time or place of delivery of the beans sold, or to describe them in definite or intelligible terms.

As to the time and place of delivery, if these were not fixed by any express provision in the contract, they are determined by the provisions of the Civil Code of this state, which are to be deemed part of the contract. One who sells personal property must deliver it to the buyer within a reasonable time after demand, and it is deliverable at the place where it is at the time of the sale or agreement to sell; or if not then in existence, it is deliverable at the place where it is purchased. (Civ. Code, secs. 1753, 1754.) So the failure of the contract to show when and where delivery was to be made would not in law render the contract a mere memorandum.

Aside from the matter of delivery, the sufficiency of the agreement as a complete one is questioned on the ground that it is indefinite and unintelligible as to the subject-matter of the sale in this, that "beans" are not mentioned, and that it does not appear what is meant by "per 100." There is nothing in this point. Parol evidence is always admissible to

identify the subject-matter of the agreement, and in the contract in question to show, as was done, that "Bayo" meant a variety of beans known as Bayous, and that "per 100" meant per hundred pounds. The rule in this respect is stated in Benjamin on Sales (sec. 213): "Although parol evidence is not admissible to supply the omissions or introduce terms, or to contradict, alter, or vary a written instrument, it is admissible for the purpose of identifying the subject-matter to which the writing refers," and as illustrative of the proposition the author says: "Parol evidence was likewise admitted to show that a sale of fourteen packets of Kent hops at 100s meant 100s per cwt., according to the usage of the hop trade." And as a further illustration of this proposition we cite *Salmon Falls Mfg. Co.* v. *Goddard,* 14 How. 446; *Butler* v. *Thompson,* 92 U. S. 412; *Ontario etc. Co.* v. *Cutting etc. Co.,* 134 Cal. 21, [86 Am. St. Rep. 231, 66 Pac. 28]; *Higgins* v. *California Petroleum etc. Co.,* 120 Cal. 629, [52 Pac. 1080].

These are the only matters upon which it is insisted that the agreement under consideration is but an informal memorandum and not a complete contract. Under familiar rules of law for the interpretation of contracts, evidence was admissible upon these subjects, and its admission did not at all affect the completeness of the contract or tend to vary or contradict its terms. The admission, however, of parol evidence to show that the agreement in question here, which provided for the sale of articles by description only, was in fact an agreement for a sale of these articles by quality—a sale by sample—was violative of the general rule against the admission of parol evidence to vary or contradict the terms of the written agreement. We do not deem it necessary to elaborate this proposition, because a reference to the decision in *Harrison* v. *McCormick,* and the reasoning of the court in that case, is, in our judgment, all that is necessary. There is no material difference in the terms of the contract in that case and those of the agreement at bar. In fact, as far as terms are concerned, they are practically identical. The agreement in the case cited was for the sale of coal described as of a certain variety, and it may be remarked parenthetically that there was no particular time or place of delivery mentioned. Parol evidence was admitted by the lower court

in that case to show, notwithstanding the agreement called
for coal by description merely, that the contract was for coal
of the same kind and quality that had been previously pur-
chased by the defendants from plaintiff, and which they were
using in their foundry, and that the kind or quality delivered
was not of the kind or quality referred to in the sample.
This court held that such evidence was inadmissible, saying:
"We do not see how the admission of this evidence can be
sustained. Its effect was to show that the coal was sold by
sample and thereby to import into the contract a warranty
that the coal sold was to be equal to the sample. When the
contract is in writing and nothing in the written contract
indicates that a sample was used or referred to parol evi-
dence cannot be allowed to show a sale by sample. (*Harri-
son* v. *McCormick*, 89 Cal. 329, [23 Am. St. Rep. 469, 26 Pac.
830], and cases there cited.)"

In our judgment, the case of *Harrison* v. *McCormick* is
entirely in accord with the contention of appellants that the
contract on its face was full and complete, and that the admis-
sion by the lower court of parol evidence to vary and contra-
dict its terms by showing that it was a sale by sample instead
of a sale by description was error.

Having admitted this evidence of a sale by sample, the lower
court subsequently instructed the jury to the effect that if
the beans originally belonged to the plaintiffs, and the Allison
Company made an agreement with them by which the plain-
tiffs agreed to sell and the Allison Company agreed to buy
the beans, and that pursuant to this agreement plaintiffs
shipped the beans to the Allison Company and the latter re-
jected them, and the plaintiffs consented to such rejection and
agreed that the transaction was ended, then they should find
for the plaintiffs regardless of the question whether defend-
ants were purchasers in good faith or not. This was error.
One of the claims made by the defendants was, that they were
purchasers in good faith for value and without notice. Of
course, if there was a sale of the beans by sample, and not by
description merely, the title would not pass absolutely to the
Allison Company until it had an opportunity to inspect the
beans. And when upon inspection it rejected them as not
conforming to the sample the effect of the rejection on that
ground, if it was a sale by sample, was that the title re-

mained in the plaintiffs. It had never passed from them, and
as the Allison Company never acquired any title, the ques-
tion of the defendants being purchasers in good faith could
not arise. The Allison Company having no title, could con-
vey none to defendants.

But, as the sale to the Allison Company was by descrip-
tion only, and not by sample, the title in fact passed to it by
delivery to it of the beans, and only revested in the plaintiffs
by virtue of the transaction between them when the dispute
over the quality of the beans arose, and which eventuated in
a mutual rescission of the contract of sale, and a return of the
beans from the Allison Company to the plaintiffs, unaccom-
panied, however, by a change of possession. It was out of
this subsequent transaction between the parties, had after
the original delivery of the beans to the Allison Com-
pany, that the rights of defendants as purchasers in good
faith arose.

And while the evidence of a sale by sample was inadmis-
sible to vary the terms of the contract with a view of show-
ing that the Allison Company never acquired any title to the
property described in it, still all the evidence as to what oc-
curred between the parties to the contract, when the beans
were examined and the dispute arose, was admissible to show
that they mutually agreed to call the transaction off, and that
they in effect intended that the title to the property which had
passed to the Allison Company should be reinvested in the
plaintiffs. That this was the intention of the parties there
can be no question, and it is of no moment as affecting the
sufficiency of the resale as between themselves that there was
not an immediate delivery of the property from the Allison
Company to plaintiffs. Section 1140 of the Civil Code pro-
vides that "The title to personal property sold or exchanged
passes to the buyer whenever the parties agree upon a present
transfer, and the thing itself is identified, whether it is sepa-
rated from other things or not."

The title to the property vests in the buyer immediately
that the contract is made, regardless of whether it is deliv-
ered to the purchaser or remains in possession of the seller.
It was manifestly the intention of the parties that Allison
should retain the possession of the property subject to plain-
tiffs' order in favor of such person to whom Gardiner might

make a sale of it, as he announced his intention of doing when the sale under the contract was declared off.

While the failure by plaintiffs to take immediate possession of the property did not affect the validity of the sale back from the Allison Company to them, as revesting the title in plaintiffs, still, under familiar rules of law their failure to do so, and the subsequent sale by the Allison Company of the property while in their possession to the defendants, if they purchased for value and without notice of any claim of plaintiffs, constituted the defendants purchasers in good faith who could successfully resist any assertion of title by plaintiffs to the property. Although as between the original parties to the contract the title vested without delivery of possession, yet as against the defendants as *bona fide* purchasers (if they were such) it was necessary that there should have been a change of possession to revest title in the plaintiffs. Gardiner, by his own conduct in not taking possession of the property at the time it was resold to plaintiffs, but leaving it with the Allison Company, was estopped by his own act from asserting title against the defendants if they were in fact purchasers in good faith of the property.

The Allison Company were conducting a general commission business, disposing of produce in their own behalf and for third parties upon commission, the usual evidence of title and the right to sell in the latter case being the consignments. Gardiner, notwithstanding the resale, however, having permitted the Allison Company to retain the usual evidence of title and right to sell—the consignments—and so investing the company with apparent authority to sell, could not assert a claim of ownership against the defendants if they were innocent purchasers dealing with the company on the faith of such apparent ownership.

"Where a vendor of personal property is allowed by his vendee to continue in possession of the property and thus to give to the world a colorable appearance of continued ownership the title of a subsequent *bona fide* purchaser from such vendor will be upheld as against the first vendee." (24 Am. & Eng. Ency. of Law, p. 1164.)

Now, one of the principal contentions of defendants was, that they were purchasers in good faith from the Allison Company of the property in question, and the court instructed

the jury upon the law applicable to that claim. In fact, the question as to whether defendants were such purchasers was the main point in the case, and it is doubtful under the view the lower court took relative to the admission of evidence of a sale by sample and the instruction based upon it whether the jury ever reached a consideration of that question at all.

It is probable they did not, because, as there was no question upon the matter of sample as far as the proof was concerned, admitted over objection of the appellants, and the instruction being clear as to the effect of that evidence, the jury doubtless disposed of the case on the theory that the title to the beans never passed to the Allison Company, and so found for plaintiffs without considering (as the court said they need not) "whether defendants were purchasers of the beans in good faith without notice and for value or not."

It was essentially a question in the case whether the defendants were such purchasers or not. And it was prejudicial error for the court to admit evidence of a sale by sample for the purpose of varying the terms of the contract and to then instruct the jury that they might return a verdict on the theory that the sale was one by sample, simply because the beans were rejected by the Allison Company as not conforming to such samples; that this rejection being acquiesced in by plaintiffs, title never at any time passed out of plaintiffs, and hence it was immaterial whether defendants were purchasers in good faith or not.

2. Before concluding this matter it is well to mention a contention that appellants urged below and here. It will be observed from the recited evidence in the case (assuming that evidence of sale by sample was admissible) that there was no dispute, but that as to the "Bayo" beans here in question they were in all respects equal to the sample, although all the beans were rejected by the Allison Company because the "pea" beans were imperfect. Appellants claim that the contract was severable because the beans were sold in different lots and at different prices; that as to the "Bayo" beans the condition of the sale was strictly and fully complied with upon delivery of them to the carrier for the Allison Company; that the title thereto vested in the company, and was not divested by the rejection which, as to them, was unauthorized, although the rejection was consented to by the plain-

tiffs. There is no merit in this contention. It was optional with the plaintiffs (on the theory of a sale by sample) whether they would insist that the contract was severable, and compel the company to take the ''Bayo'' beans and pay for them or not. It was a matter of their own choice; a right upon which they might insist or not, as they saw fit. They did not insist, but acquiesced in the rejection of all the beans, as they had a right to do, and that settled the matter. The plaintiffs having waived their right to insist that the contract was severable, could not subsequently insist on it. Neither could the Allison Company subsequently change its mind and conclude to take the beans without the consent of plaintiffs.

These are all the matters requiring consideration, and for the reasons given the order denying the defendants' motion for a new trial is reversed.

Henshaw, J., and Beatty, C. J., concurred.

ANGELLOTTI, J., concurring.—I concur. Further consideration of this case has convinced me that under the rule discussed and applied in *Harrison* v. *McCormick,* 89 Cal. 327, [23 Am. St. Rep. 469, 26 Pac. 830], parol evidence was not admissible for the purpose of showing that the sale was by sample. It appears very clear that the present judgment can be affirmed only upon the theory that the sale was by sample, and plaintiffs being precluded from showing that fact, must necessarily fail upon this appeal.

SHAW, J., dissenting.—I dissent. The rule stated in section 1856 of the Code of Civil Procedure, to the effect that when an agreement is reduced to writing such writing is to be deemed to contain all the terms of the contract, and that in such a case no evidence, parol or written, can be received of those terms, is subject to the necessary and well-known qualification that it does not apply to a written contract which, upon its face, shows but a partial statement of the agreement, and which discloses that other terms are necessary to make it complete or effective. In all such cases the omission can be supplied by evidence *aliunde.* The written contract of sale which is involved in this case expressed nothing whatever upon the subject of the quality of the beans sold. It was

silent on that point. The question whether under it the. plaintiffs were required to deliver merchantable beans, beans not merchantable, or beans of some superior quality, was necessarily left to be determined by reference to something outside of and additional to the words contained in the writing. So far as the matter of the quality of the beans was concerned the contract was incomplete on its face, and comes clearly within the qualification above stated. It is true that in such cases, in order to make such contract effective, where there was in fact no agreement by the parties upon the subject, the law steps in and assumes that the intention of the parties in respect of the omitted term is the intention which is usually found to exist in like transactions,—namely, that merchantable beans were to be delivered. This constructive agreement is made by the law for the reason that, unless the term is supplied, there is no complete or effective contract. It is not made because, in fact, the parties did, either by express words or tacit understanding to be inferred from circumstances, actually agree to that effect. There is a rule of evidence to the effect that in the absence of proof it will be presumed that the usual course of dealing was pursued. This is the foundation upon which the implication of law rests. This presumption is in itself evidence. No good reason can be shown why, in such cases, the rights of the parties should be determined by presumptive evidence alone, which is often contrary to the fact, and why they should be denied the privilege of showing by outside evidence precisely the agreement which they did make, and which they did not include in the contract which was reduced to writing. This rule, of course, has nothing to do with the other rule of evidence to the effect that parol evidence cannot be received to contradict a writing. The evidence that the sale was made by sample does not tend in the least degree to contradict anything expressed in the written contract.

The case of *Sivers* v. *Sivers*, 97 Cal. 518, is a good illustration of the proposition above stated, and is in principle an exact precedent for the case at bar. In that case the parties had executed a written agreement to pay to the plaintiff the sum of three hundred dollars, but the contract did not specify the time of payment. In such cases the law implies that the money is to be paid on demand

(Civ. Code, sec. 1657), as in case of sales the law implies that property inaccessible to the purchaser when sold shall be sound and merchantable when delivered. (Civ. Code, sec. 1771.) The cases in this respect are precisely parallel. In that case it was held that the qualification of the rule stated in section 1856 of the Code of Civil Procedure, above quoted, was applicable; that with respect to the time of payment the contract was silent; and that parol testimony was admissible to supply the omitted term of the contract by proving an agreement in parol that the payment was to be made whenever the promisors should sell a certain tract of real estate, and that prior to the beginning of the action said real estate had been sold. This case is a later case than *Harrison v. McCormick*, 89 Cal. 327, [23 Am. St. Rep. 469], as is also the case of *Guidery v. Green*, 95 Cal. 635, to the same effect. They should be held to prevail over the doctrine laid down in *Harrison v. McCormick*. The distinction I have pointed out was not discussed in *Harrison v. McCormick*. The entire subject is discussed at great length in the recent work of Wigmore on Evidence, in volume 4, beginning with section 2400. That author there takes the ground that the principles of evidence are clearly in favor of the admission of other evidence in cases where, as here, there was obviously an omission in the writing of some term of the contract, such as an implied warranty.

Under the proof that the sale was made by sample, the law would imply a warranty that the quality of the property sold was equal to the sample exhibited. (Civ. Code, sec. 1766.) This warranty would constitute a condition of the contract of sale, and in such cases the delivery of the goods to the carrier for transportation to the buyer does not have the effect of passing title to the buyer. The title will not pass until there has been an acceptance. (Mechem on Sales, secs. 522, 746, 1212; *Pope v. Allis*, 115 U. S. 372, [6 Sup. Ct. 69]; *Taylor v. Saxe*, 134 N. Y. 67, [31 N. E. 258]; *Barton v. Kane*, 17 Wis. 44, [84 Am. Dec. 728]; *Conrad v. Dater*, 2 Biss. 343, [Fed. Cas. No. 3127]; *Aultman etc. Co. v. Clifford*, 55 Minn. 159, [43 Am. St. Rep. 478, 46 N. W. 593]; *Fogel v. Brubaker*, 122 Pa. St. 10, [15 Atl. 692]; *Filley v. Pope*, 115 U. S. 219, [6 Sup. Ct. 19]; *Norrington v. Wright*, 115 U. S. 203, [6 Sup. Ct. 12]; *Grimoldby v. Wells*, 10 (L. R.) C. P. Cas.

391.) The consequence of these rules is, that in this particular case the title to the beans did not pass to the Allison Company. Its rejection of the beans on inspection put an end to the contract and the title remained in the plaintiff. There was no conflict in the evidence upon the fact that the sale was actually made by sample. It was substantially conceded, the only objection being that it was not competent evidence. The court was authorized to instruct the jury that the sale was made by sample, and that as a consequence thereof the title did not pass to the Allison Company, nor to their vendees. McDonogh and Runyon. The instruction given was therefore correct, and the verdict is sustained by the evidence. I think the judgment should be affirmed.

Van Dyke, J., and McFarland, J., concurred with Shaw, J.

Rehearing denied.