# OCTOBER TERM, 1905.

DAY LEATHER CO. *v.* MICHIGAN LEATHER CO.[1]

141 533
150 [2]123

1. BROKERS—MEMORANDUM OF SALE—CONTRACT—PREVIOUS CONVERSATIONS.

> A memorandum of sale made in triplicate and signed by a duly authorized broker, containing the names of the parties and the essentials of a contract, is a written contract which supersedes previous conversations between the parties relied upon to show an express warranty.

2. SALES—WARRANTY—BREACH—DUTY OF BUYER.

> In the absence of an express warranty, the buyer, on receipt of the goods, must act promptly after an opportunity is given to inspect, and reject them within a reasonable time.

Error to Wayne; Rohnert, J. Submitted February 7, 1905. (Docket No. 100.) Decided October 31, 1905.

Assumpsit by the Day Leather Company against the Michigan Leather Company for goods sold and delivered. There was judgment for plaintiff, and defendant brings error. Affirmed.

*Adolph Sloman* ( *Edmund M. Sloman,* of counsel), for appellant.

*Bowen, Douglas, Whiting & Murfin,* for appellee.

McALVAY, J. Plaintiff, an Indiana corporation, sued defendant, a Michigan corporation, in assumpsit for a balance claimed to be due for certain goods sold and delivered by it to defendant. The negotiations for the sale of the goods were had through G. A. Lilly & Co., brokers acting for plaintiff. The memorandum or order upon which the goods were shipped was in triplicate as follows:

---

[1] Rehearing denied December 30, 1905.

"THE DAY LEATHER CO.,
          "MICHIGAN LEATHER CO.,
                              "Detroit, Mich.
                                        "At once.
     "Terms, 2% 30 days.
     "30 rolls No. 1 harness, 22 / 26 ℔s. at 30c.
     "75 rolls B. harness, 22 / 26 ℔s. at 29c.
               "Ship in one car and secure carload rates.

                    "REMARKS.

"Confirming telegrams.
                         "Yours truly,
                              "G. A. LILLY & CO.
"Jan. 24th, 1903."

A copy of this order was sent to each of the parties. Twenty-one rolls of No. 1 leather and 72 rolls of B. leather were shipped to and received by defendant. Plaintiff claims that these grades of leather were of a kind and quality well known to the trade, that this leather was received by defendant at Detroit in good condition, and was of the class of goods described in the order. The goods were received at Detroit February 4, 1903, and delivered to defendant. The leather was in rolls, wrapped in paper. Defendant did not make any inspection of the leather, but at once shipped out many rolls on orders already taken, and put the balance in stock and continued to sell from this stock. On February 13th defendant wrote plaintiff that complaints were made as to the quality of the leather. Considerable correspondence passed between the parties. Finally plaintiff, not admitting defendant's claim that the goods were not of standard quality, requested that the goods not sold be returned. This was done, and defendant given credit on account. The amount of the bill of goods sold to defendant was $6,590.80, upon which defendant has paid $3,000 cash. Other credits for goods returned, etc., leave a balance claimed by plaintiff of $1,314.95. Defendant gave notice of recoupment under the plea, claiming damages on account of defective goods, breach of warranty, loss of business and profit, and damage to good will of business. The case was tried before the court with

a jury, and resulted in a verdict and judgment for plaintiff for the full amount claimed. From this judgment defendant brings the case to this court by writ of error.

The contention of the defendant is that there was an express warranty by the plaintiff as to the quality and grade of goods, and that the goods delivered were not as represented. In this transaction we find from the record that an offer had been made through Lilly & Co., brokers, on 100 rolls Day leather by Mr. Frank, general manager and secretary of defendant, and declined. Defendant later inquired of Lilly & Co. what he could procure 100 rolls B Day leather for, and best terms. The answer to this inquiry was by telegram, January 21, 1903, as follows: "Can sell 100 rolls Day leather One and B 22-6 pounds, ship direct. Answer." Mr. Lilly testified: "I received the final order for this leather, I think it was, the same day the order was forwarded as a submission of sale to be submitted." January 24th the order in evidence was made in triplicate and a copy sent to both plaintiff and defendant. Mr. Lilly testified that this order was in confirmation of a telegram. Mr. Frank testified: "I didn't know definitely until January 24th that I was going to have this leather." This order amounted to a contract between these parties, and the court was not in error in excluding the conversations previous to entering into this contract offered by defendant to show express warranty. That defendant so considered it appears from the record.

In sales of this kind the law is well settled that, in the absence of an express warranty, the vendee on receipt of the goods must act promptly after an opportunity is given to inspect, and reject them within a reasonable time. Upon this branch of the case the court correctly instructed the jury. He also correctly instructed the jury as to the implied warranty of fitness, and the kind and quality of goods plaintiff, under the order given, was required to furnish, and as to the measure of damages in case

of failure so to do.    The defendant's requests not given were properly refused.

In this case the defendant admits that no proper inspection of the goods was made, although there was ample opportunity, leaving only the question of fact to be determined as to whether the goods sold and received were merchantable No. 1 and B harness leather of standard quality, as known to the trade.    The charge of the court was not prejudicial.

. It is not necessary to discuss the other assignments of error.    We find no error in the case.

The judgment of the circuit court is affirmed.

Moore, C. J., and Carpenter, Grant, and Blair, JJ., concurred.