[L. A. Nos. 2132, 2139.  In Bank.—May 15, 1908.]

GERMAIN FRUIT COMPANY, Appellant and Respondent, v. J. K. ARMSBY COMPANY, Respondent and Appellant.

SALE OF DRIED FRUIT BY SAMPLE—SHIPMENT OF QUANTITY EAST—
BREACH OF WARRANTY—TIME OF DISCOVERY—MEASURE OF DAMAGES.—The measure of damages for a breach of warranty upon a sale of dried fruit by sample, upon shipment to an eastern market, is deemed to be the excess, if any, of the value which the property would have had, at the time to which the warranty referred, if it had been complied with, over its actual value at the time when the breach was discovered, or should reasonably have been discovered, which could not have been expected to occur until the boxes of fruit reached the place to which they were shipped.

ID.—APPEAL FROM JUDGMENT BY PLAINTIFF—PLEADING AND FINDINGS—
UNNECESSARY DIVISION OF DAMAGES—ACTUAL LOSS—LOSS OF PROFITS.—Upon appeal from the judgment <sup>'</sup> plaintiff, where

the difference in value appears from the complaint and findings, the segregation of that difference therein into "actual loss," and "loss of profits on resale," was unnecessary under the statute, and when so segregated, it was error for the court to allow only the "actual loss," and to disallow the "loss of profits on resale" as part of the general damages.

ID.—PLEADING — GENERAL DAMAGES — SPECIAL PLEADING OF LOSS OF PROFITS UNNECESSARY.—The damages sued for may all be recovered as general damages; and it was not necessary for plaintiff to plead specially how the loss of profits on resale arose.

ID.—DEFENDANT'S APPEAL—FINDING OF WARRANTY AGAINST EVIDENCE—WRITTEN CONTRACT—PAROL EVIDENCE—NEW TERM OF CONTRACT.—*Held*, on appeal by defendant, that the finding that there was a warranty of quality upon sale by sample is against the evidence, showing that the contract of sale was in writing and is silent on that subject. Parol evidence, though admissible to explain an ambiguity in description of the property sold and to identify the same, is not admissible to introduce any new term into the contract, importing quality or warranty, not included in the meaning of any term used therein.

ID.—IMPORT OF WORD "LOT"—DESCRIPTION.—The use of the word "lot" in the contract, to indicate "lot A," "lot K," "lot C," and "lot E," each containing a different number of boxes of apricots, is expression of description, and not of quality or warranty.

APPEALS by plaintiff from a judgment of the Superior Court of Los Angeles County, and from an order refusing to vacate the judgment, and to increase the amount thereof, and cross-appeal by defendant from the whole of said judgment and from an order denying new trial. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

Herbert Cutler Brown, for Plaintiff, Appellant in L. A. No. 2132, and Respondent in L. A. No. 2139.

Max Loewenthal, for Defendant, Respondent in L. A. No. 2132, and Appellant in L. A. No. 2139.

THE COURT.—The appeals in this case, of which there are two, were originally presented to the district court of appeal for the second appellate district, but the judges thereof being unable to agree in a judgment therein, the appeals were ordered to this court for disposition. Accompanying such order are the opinions filed by the respective judges of the district court of appeal. One of said opinions is as follows:—

"Judgment was for plaintiff and both parties appeal. In view of the conclusion reached and the order made it is deemed advisable to consider the two appeals together.

"Plaintiff's appeal (No. 149) is from an order denying its motion to vacate and set aside the judgment in the cause and to enter a different judgment, increasing the amount thereof. Defendant's appeal No. 154 is from the whole judgment and from an order denying its motion for a new trial.

"The action was brought to recover damages for breach of warranty of quality of dried apricots sold by defendant to plaintiff. The damages claimed ($1748.22) were alleged in the amended complaint to be $1126.47 for the loss actually sustained by the breach complained of, and $621.75, profits which plaintiff alleges it would have made if the goods had been as warranted. The contract between the parties, which was reduced to writing, was silent as to any warranty of the goods, but parol evidence was admitted by the court, on behalf of plaintiff, for the purpose of establishing that the sale was made upon an express warranty by sample. It is claimed by defendant that this was error, and that the findings upon which the judgment is based are unsupported without this parol evidence.

"The findings material here show: The plaintiff purchased a lot of dried apricots from defendant to be resold in the markets in cities east of the Rocky Mountains; the defendant knowing such purpose, warranted said fruit to be according to certain samples delivered to plaintiff; the fruit was in Pomona and the sale took place in Los Angeles and plaintiff relied upon such samples for quality and weight (the number of boxes being given) and had no opportunity to inspect the bulk of the fruit; plaintiff paid to defendant the full amount of the purchase price, to wit: $4352.25, and delivery for shipment was made f. o. b. cars at Pomona, as agreed; plaintiff, without examination, shipped the fruit to the city of Philadelphia for sale, where its representative, on inspection, discovered it to be inferior in quality to the samples shown, and light in weight; after notice to defendant and the refusal of the latter to take any action in the matter, plaintiff sold the apricots in the market at Philadelphia for $3225.78 over and above the freight and usual and necessary expenses

of making the sale, which was the best price obtainable for
such apricots. Had the apricots been of the quality of the
samples exhibited to plaintiff they could and would have been
sold by it in Philadelphia for the sum of $4974, in excess of
freight and expenses of sale. As an inference from these
facts, the court finds that by reason of such breach of war-
ranty plaintiff has been damaged in the sum of $1748.22;
$1126.47 being actual loss and $621.75 being the profits which
would have been made on resale if the apricots had been as
warranted. Judgment is then given for $1126.47 and denied
as to the $621.75, profits. Argumentatively, and as a conclu-
sion of law.based on specific findings made, the reason for not
including the 'profits' in the judgment is stated by the court
in its findings to be 'that defendant did not have notice that
plaintiff intended to sell said apricots in any specific market,
or at any definite price.' Plaintiff claims that on the findings
of fact made it was entitled to a judgment for $1748.22.

## "Plaintiff's Appeal No. 149.

"Considering first the plaintiff's appeal (No. 149) which
involves but one question and must be determined from the
judgment-roll, we are of the opinion that the segregation of
the damages into actual loss and profits in such a case as this
is not necessary under the statute. 'Speculative' profits are
one thing and that portion of the price of goods having an
actual value in the market above what was paid for them is
another. The goods delivered in Philadelphia were actually
worth only $3225.78 over and above freight and expenses of
sale. Had they been according to sample they would have
been of the value of $4974 over freight and expenses at the
same place. That is, the same quantity of apricots purchased
by plaintiff of defendant of the quality of the samples shown
were actually worth $4974 in Philadelphia at the time the
ones delivered to plaintiff by defendant were sold for the
smaller sum named. There is nothing 'speculative' about
these differences of value. The findings to this effect are
express, and may be considered independent of the finding
upon the theory of a resale which also fixes the last-mentioned
value at the same amount ($4974) for that purpose.

"Defendant sold goods to plaintiff which it knew the latter
would have no opportunity to inspect until they reached some

eastern market. The court finds Philadelphia to be one of the places that must be included in the term 'eastern market.' The inspection at that place disclosed goods worth $3225.78, instead of $4974. The reason for the difference was the failure and breach of defendant's warranty. If there had been any element of special additional damage by reason of plaintiff's inability to make good some contract of sale made by it, at the time of, or prior to, the purchase from defendant, and the fulfillment of such contract had been dependent upon the goods being up to sample, notice to defendant of such special sale at a definite price would have been necessary in order to hold it for such special damages. No damages are asked here for profits on a contract for resale at an advanced price.

"Damages for breach of an obligation are measured by the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which in the ordinary course of things will be likely to result therefrom. (Civ. Code, sec. 3300.)

" 'The detriment caused by the breach of a warranty of the quality of personal property is deemed to be the excess, if any, of the value which the property would have had at the time to which the warranty referred, if it had been complied with, over its actual value at that time.' (Civ. Code, sec. 3313.)

"The cases cited by both parties relating to the interference with, discontinuance of, or destruction of a business, or the prevention of one from pursuing a vocation, and dealing with the question of what profits are too remote, or speculative or uncertain to be included in an action for damages for such interference or destruction, only indirectly aid in solving the question here under consideration and are to be distinguished from this case.

"In *Hughes* v. *Bray,* 60 Cal. 284, an instruction to a jury was sustained which uses the following language: 'You should ascertain . . . what portion of the barley delivered, if any, was of an inferior quality, and in the second place you should award to the plaintiff the difference between the market value of such portion, and the market value of an equal quantity of barley of the same quality as the sample, at the time of delivery.'

"In *Shearer* v. *Park Nursery Co.*, 103 Cal. 415, [42 Am. St. Rep. 125, 37 Pac. 412], the time of the breach of warranty was held to mean the time at which the breach was discovered, or, with ordinary care and attention might have been discovered by the purchaser. That is, at the time at which, under the circumstances of the case, it reasonably should have been discovered. In the case at bar this could not have been expected to occur until the goods reached the place to which they were shipped.

"The same rule has been applied in this state in case of an implied warranty, under section 1771 of the Civil Code, that merchandise inaccessible to the examination of the buyer is warranted to be merchantable. (*Silberhorn* v. *Wheaton*, (Cal.) 51 Pac. 689.) If the opinion in *English* v. *Spokane Com. Co.*, 57 Fed. 451, [6 C. C. A. 416], be in conflict with this, it must give way to the local authority decided under our statute. But, I think the same rule of damages is declared in that case, and the same distinction made as to 'profits on resale.' The rule adopted in *English* v. *Spokane* is from Schouler's Personal Property, and is quoted as follows: 'The measure of damages recoverable for breach of warranty of quality is, in general, the difference in value between the article actually furnished and that which should have been furnished under the contract at the time and place agreed upon. . . . The rule of damages for breach of warranty is the difference between the sound value of the thing as warranted and its actual value.' The federal court, in considering the place at which the value was to be ascertained, says: 'As the sale was made at Omaha and the goods were to be delivered at Spokane, the defendant was entitled to recover the difference between the contract price and the value of the goods in the market at Spokane at the time of the delivery.' The place of delivery being the same as the place of inspection and resale, there was no reason for the application of the rule declared in *Shearer* v. *Park Nursery Co.*, 103 Cal. 415, [42 Am. St. Rep. 125, 37 Pac. 412].

"The damages which plaintiff sues for in this case may all be recovered as general damages, and it is not necessary that the 'profits' be specially alleged. (*Tahoe Ice Co. v. Union Ice Co.*, 109 Cal. 249, [41 Pac. 1020].) As the conclusion reached on defendant's appeal will require a new

trial of the case, it is not necessary for us to consider whether·
or not the amended complaint and the findings of fact would
support the judgment here indicated as proper on the case
made.   The foregoing opinion will suffice to guide the parties.
as to all matters affected by this appeal, if a new trial be had.

"By the opinion filed in appeal No. 154, it being held that
the evidence was insufficient to support the findings made in
the case, it would be idle to make an order overruling the·
trial court's action in denying plaintiff's motion.   This appeal,.
therefore, must be governed by the order made in No. 154.

### "Defendant's Appeal No. 154.

"The real question to be determined on this appeal relates·
to the admissibility of the parol evidence to affect the terms.
of the writing executed by the parties at the time said dried.
apricots were sold.   This writing was as follows:—

" 'LOS ANGELES, CAL., Oct. 19, 1901.

" 'This agreement made by and between the J. K. Armsby·
Co., and the Germain Fruit Company, Witnesseth: .

" 'That the said J. K. Armsby Co. has this day sold and
the said Germain Fruit Company has this day bought twenty-·
five hundred boxes apricots, more or less, consisting of:

" 'Lot 'A,' .................. 287 boxes
" 'Lot 'K,' .................. 104 boxes
" 'Lot 'C,' ...................1400 boxes
" 'Lot 'E,' .................. 715 boxes

at seven (7) cents per pound plus one per cent net cash f. o. b..
cars at Pomona, on surrender of bill of lading; shipment to·
be made during the month of October, 1901.

" 'Signed in duplicate.

" 'THE J. K. ARMSBY COMPANY,
" 'By A. B. MINER.
" 'GERMAIN FRUIT COMPANY,
" 'By EUGENE GERMAIN.'

"Measured by the criterion that the completeness of a writ-
ten contract, as a full expression of the parties, is the writing
itself, the writing appears upon its face to contain all the
necessary elements of a complete contract of sale.   The de-·

scription of the property sold is admittedly incorrect and it contains no express warranty of quality of the goods sold, but contracts of sale may be complete without the latter.

"The contract calls for apricots, while the evidence shows and both parties admit that *dried* apricots were the subject of the agreement. It is conceded that this defect of description may be supplied by parol. Respondent contends that the same rule warrants the introduction of parol evidence to determine what apricots were intended to be described by lot 'A,' lot 'K,' lot 'C,' and lot 'E,' and also to identify them by sample. There is no question as to the former proposition, and in a proper case and under proper circumstances the latter would no doubt be true. For instance, if the fruit itself, the label on the box, the package, or the method of packing were peculiar, or so different in character from other fruit or packages of dried apricots, as generally prepared for market, that the sample box would serve to identify or aid in identifying the goods from which the box was taken, such evidence might be admissible for the purpose of identifying the subject-matter of the written contract. 'Lot A, 287 boxes,' does not so clearly describe the goods sold as to preclude the admission of evidence for purposes of identification, if necessary. (*Ontario D. F. G. Assoc.* v. *Cutting F. P. Co.,* 134 Cal. 21, [86 Am. St. Rep. 231, 66 Pac. 28].)

"No effort, however, was made to show such circumstances as would warrant the introduction of the samples or the testimony in relation thereto upon this theory. If the facts had been such as to make the evidence proper upon this theory alone, the purpose of its introduction should have been limited so as to exclude its consideration in connection with the question of warranty of quality. On the contrary, the very purpose of its introduction was apparently to add to the written contract of sale another term, a parol warranty of quality by sample.

"The court permitted the introduction of parol evidence as to sample and applied it on the theory that it was competent proof of a warranty. It expressly found such a warranty, and the judgment for damages rests upon its breach. There is no other evidence to support the finding, except the inferences to be drawn from plaintiff's exhibit 5. This was a receipted bill showing on its face words and figures, which

taken with plaintiff's explanation of them served to corrobo-
rate plaintiff's testimony that the sale was made by sample.
Alone, it was insufficient as evidence in writing to justify a
finding to that effect. The finding and judgment therefore
rest on the parol evidence.

"It is urged by respondent in support of the court's action,
that an ambiguity or uncertainty appearing in the language
of the instrument by the use of the terms 'Lot A, 287 boxes,'
etc., the matter is open for explanation by parol evidence;
and, that such ambiguity or uncertainty may as well be
removed by showing the term was intended to mean 'accord-
ing to sample A,' as by showing that it was intended to mean
some certain pile of 287 boxes marked 'A,' or designated as
'A' in some other manner for purposes of description or
identification. In other words, that the term being ambiguous
there is no good reason why such ambiguity may not be re-
solved upon the assumption of an ambiguity in expressing
the warranty as well as upon the theory of an ambiguity
in description. There is much weight in this contention. We
must, however, bear in mind that the law permits no new
term to be introduced into a written contract by parol, while
it does permit such evidence for the purpose of making cer-
tain an ambiguous description or for purposes of identifica-
tion.

"To hold that the words, 'Lot A, 287 boxes,' considered
either in their ordinary use or as used in a commercial way,
relate to warranty rather than identification would do vio-
lence to the use of language. It would amount to what the
rule does not permit even in cases of description, the supply-
ing by parol of something not expressed in the instrument in
any manner. Neither the grammatical construction of the
language used in the contract nor the definition given to the
word 'lot' by the lexicographers justifies attributing to it a
meaning which imports quality or warranty.

"While from the parol evidence introduced the inference
may be drawn that the parties intended the sale should be
on a warranty by sample, we cannot permit any bias or
knowledge of the fact to lend weight to the construction of
the instrument. Admitting that such was the intention, an
examination of the writing shows that if this were the case
there was an entire failure to embody such intention in the

CLIII Cal.—38

contract. The language used was unfit and inappropriate to express a warranty of quality by sample or otherwise, being language importing description and identity only. 'Lot' is not an ambiguous word of warranty, but a word used solely to describe and identify. All definitions of the word display its derivation from 'share, portion or parcel.' (See Century Dictionary.)

"There are well-considered cases holding that an express warranty can be proven by parol evidence where the contract of sale is silent in this respect. The decisions in these cases are based upon the principle that a warranty is not one of the essential elements of a sale, but is a mere collateral undertaking. (*Chapin* v. *Dobson*, 78 N. Y. 74, [34 Am. Dec. 512].)

"This view, however, is not in harmony with the cases upon which the latest declarations of the law on this subject by our supreme court rest. In *Thompson* v. *Libby*, 34 Minn. 377, [26 N. W. 2], it is said: 'When made, a warranty is a part of the contract of sale. The common sense of men would say, and correctly so, that when, on a sale of personal property a warranty is given, it is one of the terms of the sale and not a separate and independent contract.' To justify the admission of parol evidence on the ground that it is collateral, it must relate to a subject distinct from that to which the writing relates.

"Where the written sale contains no warranty or expresses the warranty that is given by the vendor, parol evidence is inadmissible to prove the existence of the warranty in the former case or to extend it in the latter. (*Johnson* v. *Powers*, 65 Cal. 181, [3 Pac. 625] ; citing Benjamin on Sales, 621.)

" 'If it (the writing) imports on its face to be a complete expression of the whole agreement,—that is, contains such language as imports a complete legal obligation,—it is to be presumed that the parties have introduced into it every material item and term; and parol evidence cannot be admitted to add another term to the agreement, although the writing contains nothing on the particular one to which parol evidence is directed. The rule forbids to add by parol when the writing is silent, as well as to vary where it speaks.' (*Harrison* v. *McCormick*, 89 Cal. 330, [23 Am. St. Rep. 469, 26 Pac. 830] ; citing *Thompson* v. *Libby*, 34 Minn. 377, [26

N. W. 2] ; and *Naumberg* v. *Young,* 44 N. J. L. 331, [43 Am. Rep. 380].)

"The effect and limitations of *Guidery* v. *Green,* 95 Cal. 630, [30 Pac. 786], and *Sivers* v. *Sivers,* 97 Cal. 518, [32 Pac. 571], and the cases citing them, have been clearly distinguished in *Bradford Inv. Co.* v. *Joost,* 117 Cal. 204, [48 Pac. 1083], and they are not authority here. (See, also, *Board of Education* v. *Grant,* 118 Cal. 44, [50 Pac. 5].)

"The rule declared in *Harrison* v. *McCormick* was affirmed in *Gardiner* v. *McDonogh,* 147 Cal. 313, [81 Pac. 964], and finds abundant support elsewhere. (*Wilson* v. *New U. S. Co.,* 73 Fed. 994, [20 C. C. A. 248] ; *Union Selling Co.* v. *Jones,* 128 Fed. 672, [63 C. C. A. 224] ; *Day Leather Co.* v. *Michigan Leather Co.,* 141 Mich. 533, [104 N. W. 797].)

"Even Mr. Wigmore, who in his work on Evidence argues most strenuously for an extension of the rule relating to the admission of parol evidence, so that, what he calls, 'all the terms of the contract,' may be considered by the court, recognizes a distinction in the application of the rule to the matter of warranty and its application to matters of description (secs. 2401, 2434, and 2465). We cannot help suggesting, however, that, in his discussion on this subject, Mr. Wigmore has not given sufficient weight to the possibility, or rather probability, that the extension urged might result in the admission not only of 'all the terms of the contract,' but some additional ones, and, in rare cases, might even result in removing from the written contract some of the most important terms that had been formally, carefully and intentionally put down therein. To hold parties to diligence and care in reducing their negotiations to writing, and to hold the writing to be subject to attack only by specific allegations of fraud or mistake, appears to be the better rule, and is now supported by the weight of authority. Like the statute of frauds, this rule is founded upon long and convincing experience that written evidence is more certain and accurate than 'slippery memory.' So long as the rule is applied, the actual contract made can be preserved without fear of its being affected in its terms by the frailties of an interested human recollection. That sometimes the written contract does not include all the terms intended by reason of neglect or oversight, and injustice is thereby done in particular cases, does not justify the aban-

donment of the rule. To construe it away is to destroy one of the greatest barriers against fraud and perjury.

"Without specially indicating the rulings to which this opinion is applicable, it is sufficient to say that the admission of testimony to show a sale by sample for the purpose of establishing an express warranty of quality of the apricots sold was error. The finding of such a warranty was without competent evidence to sustain it, and the case was tried on an erroneous theory inconsistent with the rule declared in *Gardiner* v. *McDonogh,* 147 Cal. 313, [81 Pac. 964].

"The other points made by appellant on this appeal need not be considered further than they come within the reasoning in appeal No. 149."

We are satisfied that the foregoing opinion correctly states the law applicable to the points presented on both appeals, and we adopt it as the opinion of this court.

The judgment and order appealed from are reversed.

SHAW, J.—I concur in the judgment, on the authority of the decision in *Gardiner* v. *McDonogh,* 147 Cal. 313, [81 Pac. 964]. I do not agree to all that is said in the opinion adopted by the court, as I understand it. I can conceive of a sale of goods in bulk, of varying quality, in which the different qualities might be represented by samples shown to the purchaser, the goods being absent, and in which an estimate would be made by the seller of the quantities of each kind comprised in the whole bulk corresponding to the samples shown, the samples being marked as "lot A," "lot B," etc. In such a case a writing, such as that here in question, purporting to agree to sell "500 boxes lot A, and 600 boxes lot B," if construed with reference to the circumstances attending its execution, would properly be held to mean that a sale was made of 500 boxes of the quality of the sample marked as lot A and 600 boxes of the quality of the sample marked as lot B. Such evidence would, in my opinion, be competent to point the meaning of the writing. I do not believe that the opinion intends to express anything contrary to this, but I think some of its language might be so understood. The evidence admitted by the court below and here held incompetent, however, shows a mere sale by sample and, according to that evidence, the designations "lot A," etc., refer to certain

lots stored in a warehouse and not to the respective samples exhibited to the purchaser. The case falls precisely within the rule established in *Gardiner* v. *McDonogh,* which is now to be considered as the settled rule of this court.