[Civ. No. 4797. Second Appellate District, Division One.—June 29, 1925.]

## KATE COLVER et al., Appellants, v. W. B. SCARBOROUGH COMPANY (a Corporation), Respondent.

[1] TRUSTS—QUIETING TITLE—INSUFFICIENT COMPLAINT—EVIDENCE.—In this action to establish a trust in certain real property in favor of plaintiffs, to quiet plaintiffs' title thereto, and for an accounting, the complaint as amended not having stated a cause of action, the trial court did not err in sustaining the objection of defendant to the evidence offered by plaintiffs in support of such amended complaint.

[2] ID.—AMENDMENT OF COMPLAINT—ISSUES—ELIMINATION OF ALLEGATIONS OF FRAUD.—The plaintiffs in such action cannot complain if at their own suggestion their complaint is amended so as to strike therefrom certain allegations of fraud against third persons, in which plaintiffs participated, and the complaint is considered by the trial court as though it had never contained any admissions of such fraudulent conduct as ordinarily would be deemed sufficient to justify a court of equity in denying them any relief from a situation to which, by their bad faith and inexcusable conduct, they had knowingly and intentionally contributed.

[3] ID.—FRIENDLY FORECLOSURE—ABSENCE OF FRAUD—RIGHTS OF MECHANIC'S LIEN CLAIMANTS.—From the fact that plaintiffs and defendant connived to bring about a "friendly foreclosure" of the deed of trust executed by plaintiffs in favor of defendant, for the purpose of defeating the judgments of mechanics' lien claimants, it would not necessarily follow that any fraud was actually committed, as the rights of the parties had theretofore accrued, and a valid judgment by the holder of a mechanic's lien claim for services rendered would not be at all affected by any such expedient as a "foreclosure," whether "friendly" or otherwise.

[4] ID.—CREATION OF TRUST—INSUFFICIENT PLEADINGS.—In this action to establish a trust in certain real property in favor of plaintiffs, to quiet plaintiffs' title thereto, and for an accounting, the complaint was fatally defective in that it contained no appropriate allegations with reference to the creation and the existence of a trust between the interested parties at the time suit was commenced.

---

1. See 21 Cal. Jur. 252; 21 R. C. L. 605.
4. See 25 Cal. Jur. 242.

[5] ID.—CREATION OF TRUST RELATIONSHIP—ESSENTIAL ELEMENTS.— Before it could be rightfully claimed that a trust relationship existed between plaintiffs and defendant, the existence of a written instrument subscribed by defendant, setting forth with reasonable certainty an intention on the part of defendant to create a trust with reference to the property in question, and also containing the "subject, purpose and beneficiary of the trust," would have to be shown.

[6] ID.—PAYMENTS—CONCLUSIVENESS OF TRUSTEE'S DEED.—Where the trust deed executed by plaintiffs in favor of defendant provided that any deed executed by the trustee would be effectual and conclusive against the trustors, the title of the purchaser at the trustee's sale was assured as against any claim by the trustors for payments made prior to the sale; and any payment of money made to the purchaser after the trustee's sale had become effective would at least have no bearing upon the purchaser's title, however consequential might be the result as to any other possible remedy by plaintiffs as against said purchaser; and, therefore, the trial court did not err in sustaining defendant's objection to evidence of payments offered by plaintiffs in support of their asserted defenses to defendant's cross-complaint to quiet title.

[7] ID.—PLEADINGS—STATUTE OF LIMITATIONS.—In this action to establish a trust in certain real property in favor of plaintiffs, to quiet plaintiffs' title thereto, and for an accounting, neither section 324 of the Code of Civil Procedure, relating to occupancy of property under claim of title, nor section 336 of said Code, relating to the time of commencing actions other than for recovery of real property, constituted a defense to defendant's cross-complaint to quiet its title to the real property in question.

[8] ID.—PLEA OF STATUTE OF LIMITATION—EVIDENCE.—In such action, no statute of limitations applicable to the case having been pleaded by plaintiffs in their answer to defendant's cross-complaint to quiet title, the trial court did not err in refusing to permit the introduction in evidence of a deed to a portion of the property in suit, which deed was executed by one of the plaintiffs, as grantor, to the other plaintiff, as grantee, where such deed was offered in support of the plea of limitation.

[9] ID.—ISSUES—FINDINGS—WAIVER.—In the absence of a waiver, either express or implied, upon the trial of a question of fact by the court, the parties to the litigation are entitled to a decision in writing; and ordinarily a finding must be made on all material issues, although no particular form is required.

[10] ID.—INSUFFICIENT COMPLAINT—FINDINGS UNNECESSARY.—On the granting of a nonsuit, no findings by the court are necessary; and

9.   See 24 Cal. Jur. 935; 26 R. C. L. 1088.

10.   See 24 Cal. Jur. 934.

the same rule applies where the court gives judgment for defendant based upon a ruling by the court sustaining an objection to the introduction of any evidence by the plaintiff for the reason that the complaint fails to state a cause of action.

[11] ID.—ISSUES—OWNERSHIP—FINDINGS.—Where the ultimate issue raised by defendant's cross-complaint to quiet title and the answer of plaintiffs thereto · is the ownership of the property described in the pleadings, a finding in effect that defendant is the owner of the property, and that plaintiffs have no right, title or interest therein, without any enumeration of the probative or evidentiary facts necessary to support such ultimate facts, is all that is required.

[12] ID. — TRUST DEED — CONTEMPORANEOUS AGREEMENT. — The fact that, contemporaneously with the execution by plaintiffs to defendant of the deed of trust covering the real property in question, the parties entered into a written contract wherein it was provided, after referring to the execution of the deed of trust to secure the repayment to defendant of certain advances, that plaintiffs would turn over the entire income from the property to defendant, to be applied on certain accounts, and that plaintiffs would endeavor to negotiate a new loan to take up the loans of defendant, did not in effect make the transaction a mortgage, and such contemporaneous agreement neither added to nor subtracted from the conditions specified in the deed of trust.

(1) 39 Cyc., p. 622, n. 54.   (2) 4 C. J., p. 702, n. 66.   (3) 27 Cyc., p. 1174, n. 60.   (4) 32 Cyc., p. 1350, n. 21.   (5) 39 Cyc., p. 47, n. 60.   (6) 39 Cyc., p. 154, n. 26.   (7) 37 C. J., p. 742, n. 23. (8) 37 C. J., p. 1247, n. 20.   (9) 38 Cyc., p. 1960, n. 57, p. 1968, n. 97.   (10) 38 Cyc., p. 1955, n. 23.   (11) 38 Cyc., p. 1981, n. 59. (12) 41 C. J., p. 354, n. 62.

APPEAL from a judgment of the Superior Court of Los Angeles County. John L. Fleming, Judge. Affirmed.

The facts are stated in the opinion of the court.

Wm. M. Morse, Jr., Arthur Lasher and J. W. Hocker for Appellants.

Scarborough & Bowen for Respondent.

HOUSER, J.—According to the prayer of the complaint herein the purpose of plaintiffs in bringing suit against the

11.   See 24 Cal. Jur. 968; 26 R. C. L. 1092.

defendant was to procure a decree of court that the defendant held certain real property in trust for plaintiffs; that plaintiffs' title to said property be quieted, and that an accounting be had as to certain moneys alleged to have been paid by plaintiffs to the defendant on account of an indebtedness owing by plaintiffs to the defendant, the payment of which indebtedness being secured by a trust deed or trust deeds to the property involved.

In substance the allegations of the complaint as amended at the trial were that Kate Colver, one of the plaintiffs, who was eighty-one years of age and the mother of Fred Colver (the other plaintiff), was the owner of two city lots, upon one of which were located three cottages, and that she was desirous of building an apartment house upon the other of such lots; that formerly she and her husband were socially, politically and religiously associated with W. B. Scarborough and looked upon him as their friend and confidential adviser; that plaintiffs consulted with him regarding the proposed construction of said apartment house, and that they were "counseled by the said W. B. Scarborough that he would furnish the money to build such apartment house"; that the apartment house was completed about April 1, 1913; and that plaintiff Fred Colver, on his own account, personally bought the necessary furniture to furnish the same; and that W. B. Scarborough later incorporated his business into the W. B. Scarborough Company, a corporation, the defendant herein. The complaint further set forth:

"That the moneys advanced by the defendant corporation were represented by trust deeds in the sum of approximately $22,500 and subsequent thereto various amounts were advanced on an open book account to be used in carrying out the terms of an agreement entered into between the plaintiffs and the defendant corporation which agreement is in words and figures following, to-wit:

" 'This agreement made the 25th day of April, 1913, by and between W. B. Scarborough Company, hereinafter designated as the party of the first part, and Kate Colver, hereinafter designated as party of the second part.

" 'Witnesseth: That whereas the party of the first part is advancing to the party of the second part, certain sums of money for the completion of an apartment building on

Lot 1 of Tract No. 2059, City of Los Angeles, State of California (said sum of money so advanced being secured by a trust deed on Lots One [1] and two [2] of Tract No. 2059), the party of the second part in consideration of said advancement of moneys agrees to turn the entire income from said apartment house into the office of the party of the first part; out of said income the party of the first part will pay the interest on the trust deed now on said property as the same becomes due, also the insurance premiums, the balance of the income to be applied on the principal due on the second Trust Deed.

" 'The party of the second part agrees that she will as soon as ninety days has elapsed, from the date of filing notice of completion on said building, endeavor to negotiate a loan or loans on this building with which to take up the loans held by W. B. Scarborough Company on this porperty.

" 'In the event said party of the second part is unable to secure a loan large enough to lift the entire indebtedness, the party of the second part will secure as large a loan as she can, and the party of the first part agrees to release the first trust deed and take a second trust deed for the balance, which trust deed will be paid out of the income as hereinbefore stated.

" 'W. B. SCARBOROUGH COMPANY.

" ' (Signed) By W. T. McALLISTER, Secy.

" 'KATE COLVER.' "

In addition thereto, the complaint contained allegations in substance that at the time of the execution of the said agreement, and at all times mentioned in the complaint, plaintiffs were in possession of said apartment house; that according to the terms of said agreement, the defendant was to have the net income from the apartment house, and that the plaintiffs were to receive the rents accruing on the cottages located on the property; that at various times after the agreement herein referred to was executed, plaintiffs endeavored to procure from the defendant corporation a statement of the money remaining unpaid under said agreement, but that the defendant refused to furnish same; that in pursuance of the terms of the agreement plaintiffs negotiated for and arranged to get loans in excess of the principal amount of the trust deeds, but that W. B. Scarborough refused to accept the same.

The complaint also contained the allegation: "That at all times since the date of foreclosure of said trust deed the said W. B. Scarborough Company has been a trustee holding the title to said premises for and on account of the plaintiffs herein and that the acts of the plaintiffs herein, in paying the large sums of money to the defendant corporation was because of their belief in the existence of such trust and because of their great reliance in the honesty, integrity and uprightness of W. B. Scarborough, the manager and owner of said defendant corporation."

It was further alleged that W. B. Scarborough demanded from plaintiffs a quitclaim deed of the premises and served a notice on the tenants of the apartment house to pay rent to W. B. Scarborough Company; that there were no arrangements entered into between plaintiffs and the defendant regarding the management of the apartment house, and that no compensation was paid to either of the plaintiffs for the use of the furniture belonging to plaintiff Fred Colver; that prior to the bringing of the action defendant threatened to take possession of the premises and to oust plaintiffs therefrom, and that such action, if taken, would cause great and irreparable loss to plaintiffs; that plaintiffs at all times since entering into said agreement diligently and carefully complied with all the terms and conditions thereof, and at the time of filing the complaint were ready, able and willing to negotiate a loan on the property sufficient to pay off the claims of the defendant, in the event that the amounts due and unpaid could be determined by an accounting—which accounting plaintiffs alleged was necessary in the premises.

When the complaint was filed, it also contained averments to the effect that because of the fact that certain judgments had been recovered by mechanics' lien claimants against plaintiffs, which judgments constituted a lien against the property involved in this action, it was agreed between plaintiffs and the defendant that "they would make a friendly foreclosure of said trust deeds or one of them in order to defeat the said judgments held by the holders of said mechanics' liens and it was then and there agreed by the defendant corporation that such foreclosure was a friendly foreclosure and that the status of the plaintiffs would continue to be the same as it was before under the terms of the agreement hereinabove set forth."

On the trial of the action, after the defendant had suggested to the court that because of plaintiffs' allegations of said fraud, in which plaintiffs had freely participated, plaintiffs could receive no relief from a court of equity, plaintiffs made a motion to strike from the complaint all allegations relating to any "friendly foreclosure" of the trust deed—which motion was granted by the court. Plaintiffs then offered evidence to prove the remaining allegations of their complaint, to which an objection was made by the defendant on the ground that the complaint as amended did not state a cause of action—which objection was by the court sustained. Whereupon, the defendant offered evidence in support of its cross-complaint, and plaintiffs undertook to present evidence tending to show that the defendant was not entitled to any relief, first, by virtue of ownership of a part of the property by plaintiff Fred Colver, as evidenced by a deed executed by Kate Colver to Fred Colver conveying a portion of the property involved in the action; secondly, by adverse possession of the property by plaintiffs; and lastly, by a showing of certain payments on the indebtedness secured by the trust deeds on the property, some of which were alleged to have been made before, and some after, the "friendly foreclosure" took place. Defendant's objection to the introduction of such evidence was sustained by the court. From a judgment in favor of the defendant, plaintiffs appeal.

[1] Appellants' first specification of error is that the trial court erred in sustaining the objection of the defendant to the evidence offered by plaintiffs in support of the complaint as amended.

It is contended by appellants that after the complaint was amended, the original complaint ceased to perform any function as a pleading; and while the respondent concedes that such "is true under ordinary circumstances," it is urged by the respondent that the allegations which were stricken from the complaint were of such a nature that they should be considered by this court. If, however, it should be determined that the complaint as finally amended failed to constitute a cause of action, the question of plaintiffs' right to equitable relief because of their failure to come into a court of equity with clean hands would become immaterial and unnecessary of determination. [2] The appellants

cannot complain if at their suggestion the complaint was considered by the trial court as though it had never contained any admissions of such fraudulent conduct as ordinarily would be deemed sufficient to justify a court of equity in shutting its doors in the faces of the complainants and denying them any relief from a situation to which, by their bad faith and inexcusable conduct, they had knowingly and intentionally contributed. **[3]** But without deciding the question, it is not at all certain that, even assuming the allegations of connivance between the parties to bring about a "friendly foreclosure" for the purpose of defeating the judgments of mechanics' lien claimants to be true, it would follow that any fraud was actually committed. No matter what the purpose of the "friendly foreclosure" may have been, the rights of the parties had theretofore accrued; and it is clear that a valid judgment by the holder of a mechanic's claim for services rendered would not be at all affected by any such expedient as a "foreclosure," whether "friendly" or otherwise.

The complaint as amended, and as in substance hereinbefore set forth, was incomplete in many necessary specific allegations in order that a cause of action be stated either to declare a trust, or, as founded thereon and as incidental thereto, a suit for an accounting. There is no direct allegation contained in the complaint that plaintiffs ever borrowed any money from the defendant; or that any trust deed was executed by plaintiffs in favor of the defendant; or that the defendant ever caused the property in question to be sold under any trust deed; or that the defendant ever purchased said property at a sale under the powers conferred by any trust deed; or, indeed, ever, acquired the property in any manner whatsoever. The most that can be said for the allegations of the complaint as amended, is that it may be inferred that some such things took place.

**[4]** But even though it might be assumed that the complaint as amended were otherwise perfect in its construction as to necessary allegations in order that it might be decreed by the court that the defendant was holding the property in question as a trustee for plaintiffs, the pleading remains fatally defective in that it contains no appropriate allegations with reference to the creation and the existence of a trust between the interested parties at the time suit was commenced.

The provisions of section 852 of the Civil Code, so far as affects the facts of this case, are that no trust in relation to real property is valid unless created or declared by a written instrument subscribed by the trustee; and the same rule of law is to be deduced from section 1971 of the Code of Civil Procedure.   Section 2221 of the Civil Code contains the provision that "a voluntary trust is created, as to the trustor and beneficiary, by any words or acts of the trustor, indicating with reasonable certainty an intention on the part of the trustor to create a trust, and the subject, purpose, and beneficiary of the trust."

[5] It is therefore apparent that before it could be rightly claimed that a trust relationship legally existed between the parties, the existence of a written instrument subscribed by the defendant, setting forth with reasonable certainty an intention on the part of the defendant to create a trust with reference to the property in question, and also containing the "subject, purpose and beneficiary of the trust," would have to be shown.  It is a cardinal rule of pleading that allegations therein must be by direct statements; but even though such rule be not invoked, the complaint herein as amended is wholly lacking in averments from which it might be more than conjectured that there had been any attempt to comply with the requirements of the statute.   The only written instrument between the parties which in any manner refers to a possible trust, such as is contemplated by the provisions of the statutes to which reference has been had, is that heretofore set forth herein; and a perusal of the terms of that agreement discloses nothing in the way of a compliance with the provisions of the law.   That instrument, as shown by its date, as compared with the date of the deed executed on the sale of the property under the trust deed, as appears by the evidence introduced by the defendant under its cross-complaint, was executed several years before any trust relationship is even suggested as having existed between the parties.  For obvious reasons, the agreement is therefore entirely silent with reference to any trust, or its subject, or its purpose, or its beneficiary.  So far, therefore, as a cause of action being stated to enforce a trust is concerned, we are constrained to hold that the ruling by the trial court sustaining the defendant's objection thereto was correct.

The only foundation upon which plaintiffs' action for an accounting could rest would be that a trust existed between the parties affecting the property in question. If the complaint as amended failed to show the existence of such relationship, it is apparent that a suit for an accounting based on a trust could not survive.

As to the prayer of the complaint that in substance, after judgment by the court the defendant held the legal title for the use of plaintiffs; and after, in accordance with an order of the court, an accounting between the parties had been had, and proper instruments of conveyance had been executed by the clerk of the court granting or assigning rights and interests to the respective parties, as by the court decreed—then that plaintiffs' title be quieted to the property involved in the suit—it is equally clear that the allegations are insufficient in either form or substance upon which might be predicated such relief. Nor is such claim seriously advanced by appellants.

[6]   With reference to the several asserted defenses to the cross-complaint regarding which, by order of the trial court in sustaining the objection by the defendant, plaintiffs were precluded from offering evidence, it need only be said that as to the alleged payments of money made on the indebtedness secured by the trust deed, upon the trustee's sale of the property (which sale was admittedly made under the conferred power of the trust deed), any and all such payments were forever lost to plaintiffs under the provisions of the trust deed to the effect that any deed so executed by the trustee would be "effectual and conclusive as against the said party of the first part" (plaintiffs). See *Roberts* v. *Colyear,* 179 Cal. 669 [180 Pac. 937]; *Bryant* v. *Hobert,* 44 Cal. App. 315 [186 Pac. 379]; *Duncan* v. *Wolfer,* 60 Cal. App. 120 [212 Pac. 390].

Title in the purchaser at the trustee's sale being thus assured as against any claim by the trustor antedating the sale, it would follow that any payment of money made to the purchaser after the trustee's sale had become effective would at least have no bearing upon the purchaser's title, however consequential might be the result as to any other possible remedy by the former owner of the property as against the purchaser.

[7]   As a separate answer to the defendant's claim of title to the property, as set forth in its cross-complaint, plaintiffs pleaded sections 324 and 336 of the Code of Civil Procedure as a bar.   The former section is as follows: "Where it appears that there has been an actual continued occupation of land, under a claim of title, exclusive of any other right, but not founded upon a written instrument, judgment, or decree, the land so actually occupied, and no other, is deemed to have been held adversely."

Section 336 of the Code of Civil Procedure relates to the "time of commencing actions other than for recovery of real property," and provides: "Within five years: 1. An action upon a judgment or decree of any court of the United States or of any state within the United States.   2. An action for mesne profits of real property."

No authority has been cited by appellants as sustaining their position that either of such statutes constitutes a defense to a suit to quiet title such as is here in question, and this court is unable to perceive the application of either of them thereto.

[8]   Appellants, however, suggest that the trial court erred in refusing to permit the introduction in evidence of a deed to a portion of the property here involved, executed by Kate Colver as grantor to Fred Colver as grantee.   In appellants' specification of error the statement concerning said deed is that it was "offered in support of the plea of limitation"; but in view of the ruling that no statute of limitation having application to the facts of the case was pleaded, and as it is not contended by appellants that the proffered instrument had any other bearing upon the controversy between the parties, it is apparent that any evidence offered as a defense under an inapplicable statute would be immaterial.

It is next urged that "there were no findings of fact,—the pretended findings of fact being merely conclusions of law and do not constitute a finding of any fact, although the complaint and answer join issues of fact to be determined; and the cross-complaint and answer thereto join issues of fact to be determined," etc.

[9]   It is unquestioned law that in the absence of a waiver, either express or implied, "upon the trial of a question of fact by the court," the parties to the litigation

are entitled to a "decision" in writing (secs. 632, 633, 634, Code Civ. Proc.), and that ordinarily a finding must be made on all material issues, although no particular form is required. As is said in *Clary* v. *Hazlitt,* 67 Cal. 286 [7 Pac. 701]: "If the truth or falsity of each material allegation, not admitted, can be demonstrated from the findings, the requirements of the code are met."

**[10]** It will be remembered that the objection by the defendant to the introduction of any evidence by plaintiffs on the ground that the complaint did not state facts sufficient to constitute a cause of action was sustained by the trial court. It has been repeatedly held that on the granting of a nonsuit, no findings by the court are necessary. (*Gilson Quartz M. Co.* v. *Gilson,* 47 Cal. 597; *Reynolds* v. *Brumagim,* 54 Cal. 254; *Harney* v. *McLeran,* 66 Cal. 34 [4 Pac. 884]; *Toulouse* v. *Pare,* 103 Cal. 251 [37 Pac. 146]; *Kennedy etc. L. Co.* v. *Dusenbery,* 116 Cal. 125 [47 Pac. 1008]; *Jewell* v. *Pierce,* 120 Cal. 79 [52 Pac. 132].)

There is no difference in principle, so far as the right to findings is concerned, between a judgment for defendant granted on a motion for nonsuit and a judgment for defendant based upon a ruling by the court sustaining an objection to the introduction of any evidence by the plaintiff for the reason that the complaint fails to state a cause of action. In the former case the facts proved are deemed insufficient; and in the latter case the facts alleged, considered as proven, are held insufficient. So that, so far as relates to the complaint herein as amended, plaintiffs were not entitled to any findings thereon by the court.

**[11]** As to the issues raised by the cross-complaint and the answer thereto, it appears that by the cross-complaint the defendant alleged in substance that it was the owner of the property in question and that plaintiffs had no right, title, or interest therein; and, in addition thereto, the defendant set up certain evidentiary matter to support its claim to ownership of the property. Plaintiffs' answer to the cross-complaint, besides containing a specific denial of the defendants' allegations of ownership and the several facts tending to establish same, as a separate defense included a practical repetition of the allegations of plaintiffs' original complaint.

The ultimate issue raised by the cross-complaint and the answer thereto was the ownership of the property described in the pleadings.

The issue tendered by plaintiffs as to the statute of limitations under sections 324 and 326 of the Code of Civil Procedure, as heretofore pointed out, had no bearing upon the facts of the case and presented no defense to the allegations of the cross-complaint. Quoting the language used by the court in *Estate of Aufret,* 187 Cal. 34, 37 [200 Pac. 946, 947]: "We know of no decision to the effect that a judgment or decree for a petitioner may be reversed for want of a finding, where the answer does not set forth any defense. Error is never presumed."

The findings by the court of which complaint is made are as follows:

"That the plaintiffs have not, nor has either of them, any right, title or interest in or to said property as against said defendant; nor have the plaintiffs herein any right to the possession of said property, nor to any of the rents, issues or profits growing out of the same; nor have they any right to rent or lease said property or to collect the rents therefrom; and all claims which the plaintiffs may have in or to said property or any portion thereof, or any interest therein, or to possession thereof as against the defendant herein, are without right or foundation."

It thus appears in effect that the defendant was found to be the owner of the property, and that plaintiffs had no right, title or interest therein.

With reference to the sufficiency of a finding of "ownership" of real property as distinguished from a finding of the evidentiary facts from which the conclusion of such ownership may be deduced, it has been repeatedly held by the courts of this state that ownership is the ultimate fact which may be so pleaded and proved by the litigant and afterward so found by the court. In the case of *Gavin* v. *Swain,* 113 Cal. 324 [45 Pac. 677], where the question was directly before the court, it is said: "That *ownership* or (in technical language) *seisin* of real property is a fact that may be pleaded, proved, and found as a material ultimate fact in all cases involving title to real property is unquestionable in this state. (*Payne* v. *Treadwell,* 16 Cal. 244; *Murphey* v.

*Bennett,* 68 Cal. 528 [9 Pac. 738]; *Daly* v. *Sorocco,* 80 Cal. 367 [22 Pac. 211]; *Gill* v. *Driver,* 90 Cal. 72 [27 Pac. 64].)

Where the ultimate fact to be determined is that of ownership of real property it is the settled rule in this state that a finding upon the fact of ownership, without any enumeration of the probative or evidentiary facts necessary to support such ultimate fact, is all that is required.

In the case of *Adams* v. *Crawford,* 116 Cal. 495, 499 [48 Pac. 488, 490], the question of the sufficiency of findings in a quiet title suit is passed upon by the court as follows:

"Appellant also contends that the court failed to find upon several issues. The specifications in that regard are all of probative facts, such as that the court failed to find whether the plaintiff made a valid location, whether the allegations of certain paragraphs of the complaint were true, and other matters of like character. The court found as ultimate facts that the plaintiff is not and was not at any time the owner of the property described in the complaint, and that the defendants are the owners of said property. These are the ultimate facts in the case, and include the findings of all probative facts necessary to sustain the finding of the ultimate facts."

In the later case of *Cooley* v. *Miller & Lux,* 156 Cal. 510, 523 [105 Pac. 981], it is said: "The rule seems to be that in cases where it is sufficient for the plaintiff, suing in regard to property, to allege merely that he is the owner thereof, a denial of this allegation is sufficient to authorize the admission of evidence that the title under which plaintiff claims was absolutely void and not voidable merely, or any evidence to show that plaintiff had no title, and that in such cases a finding upon the fact of title or ownership is good without a finding of the particular facts upon which such title or want of title depends."

See, also, *Cooper* v. *Miller,* 113 Cal. 238 [45 Pac. 325]; *Montecito Valley Co.* v. *Santa Barbara,* 144 Cal. 578, 594 [77 Pac. 1113]; *Estate of Hill,* 167 Cal. 59 [138 Pac. 690].

[12] Appellants finally urge that the contemporaneous agreement construed with the terms of the deed of trust would in effect make the transaction a mortgage, and cite several authorities in support of the doctrine that a deed, though absolute on its face, may be held to be only security for the payment of a debt. But a deed of trust in itself is

nothing more than that, coupled with certain powers in the trustee not capable of being provided for, or at least not usually stipulated in, an ordinary mortgage. The agreement between the parties which was entered into contemporaneously with the execution of the deed of trust neither added to nor subtracted from the conditions specified in that instrument. So far as affects the trust deed, it simply provides for a method of insuring the payment to the defendant of the interest to become due on the obligation of which the trust deed is security; also the insurance premiums on the policy of insurance covering the buildings on the premises, and, lastly, the balance of any income to be applied to the payment of the principal debt.

We find no prejudicial error in the record. It is accordingly ordered that the judgment be and the same is affirmed.

Conrey, P. J., and Curtis, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 28, 1925.

Houser, J., *pro tem.*, did not participate.