[Civ. No. 5922. First Appellate District, Division Two.—October 21, 1927.]

W. O. MORGAN et al., Respondents, v. FRANK E. GREEN, Appellant.

Emmons & Aldrich for Appellant.

C. O. Bettys and Brittan & Brittan for Respondents.

NOURSE, J.—Plaintiffs sued for damages for breach of contract. The cause was tried before a jury, resulting in a verdict of seven thousand dollars ($7,000) in favor of the plaintiffs, and from the judgment following the verdict the defendant has appealed upon a typewritten record.

The complaint alleged that on April 22, 1924, the plaintiffs and defendant executed a written lease covering 120 acres of land owned by the defendant. It was recited in the lease that the lessees having plowed and cultivated the land agreed to plant the same to cotton and to irrigate, cultivate, chop, and care for said cotton to maturity and to keep the said land free and clear of weeds and grass; that the lessees "shall have the use of the buildings, corrals and pumping plant now being installed" throughout the season and shall furnish all tools and implements and pay all expenses in connection with the planting and bringing to maturity of the cotton, and that "the lessor shall pay for the cotton seed to plant said land and shall pay all charges for power to operate said pumping plant"; that the cotton produced, together with the cotton-seed, shall be divided equally between the lessor and the lessees, "which portion the lessees agree shall constitute in full their entire compensation for their undertaking herein." The complaint alleged that as a part of the consideration for signing and executing the lease the defendant at the time and concurrently with its execution agreed with the plaintiffs that he would furnish and supply the plaintiffs from the pumping plant that was being installed on the property a sufficient and ample amount of water to irrigate all the land sufficient for raising to maturity the cotton that was to be planted on the land; that plaintiffs, in pursuance of said agreement, did immediately plow, cultivate, list, and plant the whole of said land to cotton; that they had faithfully and completely performed all acts to be performed by them, but the defendant has failed and refused to furnish the water to irrigate the land; that by reason thereof the plaintiffs were unable to irrigate the land or to raise any cotton thereon to their damage. The answer admitted the execution of the written contract of April 22, 1924, and denied all allegations relating to any oral agreement covering the supply of water for irrigating the crop. It denied that pursuant

to the terms of the written contract the plaintiffs plowed, cultivated, or performed any labor upon the land, but alleged that all labor performed by the plaintiffs on the land was done prior to the execution of the lease while they were operating as subtenants under a lease between the defendant and George and Griffin; that prior to April 22d all the planting of cotton upon said land had been performed from cotton-seed furnished by the defendant to George and Griffin under the terms of their lease. It was denied that the defendant made any agreement to furnish any water to irrigate the land either before or after the execution of the lease of April 22d.

Upon the trial it developed that George and Griffin had leased the premises from the defendant under a written contract dated January 26, 1924, for the purpose of planting the land to cotton. In the month of February the plaintiffs agreed with George and Griffin to take over their lease and had a conversation with the defendant in which the latter agreed that this might be done if the original lessees would hold themselves responsible for the performance of the terms of the lease. Under this arrangement the plaintiffs prepared and planted the land to cotton, commencing work about February 27th, and finishing some time before April 22d. At the time they started work upon the premises a well had been drilled, but no pump installed. On or about March 2d, the defendant installed a pump in this well, but was able to develop only a small quantity of water. For a period of some two months thereafter he made every endeavor to develop water in the well, but was finally compelled to abandon operations because the well continually filled with sand. During the month of March the plaintiffs and the defendant had several conversations relating to defendant's efforts to develop water from the well, and on April 1st occurred the conversation upon which the plaintiffs rely as establishing a contemporaneous oral agreement to furnish sufficient water for the irrigation of the crop. The plaintiff Morgan's version of this conversation is (page 12, R. T., line 23):

"I says to Mr. Green, I says, 'Mr. Green, I think the well is a failure, it has just about quit running, there don't seem to be any water.

" 'Don't seem to be any water, what about it?' and he says, 'There is plenty of water there, all we need is to perforate the well,' . . . I said, 'Mr. Green, what if the water isn't there, what will we do about it?' and he says, 'You go ahead with your work, go right on, and if I fail to produce the water I will pay for your work.' Well, I went on back then, told my partner what he said."

Another conversation occurred shortly after this as testified to by plaintiff Morgan, as follows (page 14, R. T., line 18):

"He says, 'There is an abundance of water there, I will guarantee the water, you go ahead and do the work; . . . I am going to send over and get an air-compressor and blow that sand and water out and put that pump back and we will have an abundance of water.' "

Plaintiffs continued to live upon the land and to do some work in connection with the cleaning out of the well under their arrangement with George and Griffin until April 21st, when they approached the defendant and asked that they be given a lease in their own names covering the premises. A lease was accordingly prepared and handed to the plaintiffs for their examination. They returned on the following day, having signed the lease which is in evidence. Asked as to conversations relating to the water supply at this time, the plaintiff Morgan testified (Tr., page 17, line 25):

"I don't remember anything said about the water at all at that time."

The plaintiff Townsend testified (Tr., page 78, line 12):

"Mr. Green, he said that the pump would be all right now, he thought, we would have plenty of water. He says, 'After it rains a while the well will get stronger.' . . .

"That was about all that was said about the water then."

On behalf of the defendant it was shown that he had made every effort to develop water from the particular well in which the pump was installed, but that the well continually filled with sand until finally abandoned some time in the month of May, 1924. It was also shown that when it appeared that the water could not be developed the defendant offered to procure for the plaintiffs another tract of land in the immediate neighborhood which he agreed to lease to the plaintiffs under the same terms of the contract

of April 22d. Plaintiffs, however, refused to accept this offer, stating that they were wholly unable to finance themselves during the summer and that they would have been unable to have continued their contract with the defendant unless he had furnished them with funds to carry them over until the returns from the crop were received. It was also shown that the sanding of the well was not an unusual occurrence in that locality, but that it was known that many wells in the immediate vicinity had been abandoned on account of that condition and that these facts were all known to the plaintiffs before the execution of the lease.

During the trial of the case the defendant objected to the admission of all the testimony relating to the conversations had covering the supply of water upon the grounds that it tended to contradict and vary the writing of April 22d. On this appeal respondent argues that the testimony was admissible under the exception to the general rule that when a portion only of the agreement between the parties had been reduced to writing it was proper to allow parol evidence covering the portion omitted, and that it was also admissible for the purpose of explaining the true meaning of the portion of the contract reading:

"The lessees shall have the use of . . . pumping plant now being installed throughout the season, and shall . . . pay all charges in connection with the planting and bringing to maturity of the cotton planted on said land."

It will be noted that the theory upon which the complaint was drawn was that the contract to furnish sufficient water to mature the crop was a contemporaneous collateral agreement made at the time of the execution of the written agreement and as a part of the consideration for the latter. This theory, however, was abandoned during the course of the trial and respondents insisted that the conversations were admissible for the purpose of explaining the true meaning of the written contract and that as so explained that contract contained an express covenant on the part of the appellant to furnish water sufficient to irrigate the land and to bring the crop to maturity.

The two theories in support of the judgment are inconsistent. ▪ If the language of the lease relating to the pumping plant is to be interpreted as relating to the supply of water in the well, then a collateral covenant to furnish

sufficient water to bring the entire crop to maturity could not be proved by parol. ■■■ The rule is found in section 1856 of the Code of Civil Procedure, which declares that when the terms of an agreement have been reduced to writing it is presumed to embrace all the terms agreed upon. The decisions are all in harmony with the section of the code running from *Harrison* v. *McCormick*, 89 Cal. 327, 330 [23 Am. St. Rep. 469, 26 Pac. 830], to *Thoroman* v. *David*, 199 Cal. 386, 390 [249 Pac. 513]. We cannot improve upon the language of *Thompson* v. *Libby*, 34 Minn. 377 [26 N. W. 1], quoted in the Harrison case and approved in the later decisions:

"If it imports on its face to be a complete expression of the whole agreement—that is, contains such language as imports a complete legal obligation—it is to be presumed that the parties have introduced into it every material item and term; and parol evidence cannot be admitted to add another term to the agreement, although the writing contains nothing on the particular one to which the parol evidence is directed."

■■■ Upon the theory first advanced by respondents that the evidence was admissible because the writing did not include all the terms agreed upon—the rule is uniform that evidence of such collateral agreements is admissible only when the circumstances attending the execution of the writing show that the parties did not intend it to be a complete and final statement of the whole transaction (10 Cal. Jur., p. 927). ■■■ The lease here does not come within this exception. It appears upon the face to be a complete statement of the undertakings of the respective parties without any uncertainty as to their respective legal obligations within the rule of *Harrison* v. *McCormick* (*supra*), *Gardiner* v. *McDonogh*, 147 Cal. 313, 319 [81 Pac. 964], and *Germain Fruit Co.* v. *Armsby Co.*, 153 Cal. 585, 595 [96 Pac. 319].

Respondents cite *Henika* v. *Lange*, 55 Cal. App. 336 [203 Pac. 798]. The case is not in point. The court was there considering the admissibility of parol evidence of the kind of crop which the parties contemplated was to be planted by the lessees under a written lease. By the terms of the lease the lessor contracted to furnish the lessees "a pumping plant of sufficient size to irrigate the above de-

scribed land properly'' and the lessees agreed to run said pumping plant ''continuously during the growing season of the crop.'' During the course of the trial parol evidence was admitted for the purpose of showing that the parties had agreed that the land should be planted in rice, that it was not suitable for raising any other crop, and that in the raising of rice a large supply of water was needed— greater than for any other crop. All of this evidence was admitted on the theory that it was necessary to show what the parties contemplated by the language of the lease reading: ''a pumping plant of sufficient size to irrigate the above described land properly.'' The difference between the Henika case and the case at bar is apparent. In the first the lessor obligated himself to furnish and install a pumping plant of sufficient size to irrigate the land for the purpose of raising a particular crop. If one well or one pumping plant was insufficient for this purpose the obligation was upon him to seek other wells or install other pumping plants. In the case at bar the lessor merely agreed to turn over to the lessees a particular pumping plant described in the lease as the one then being installed on the premises and he further agreed to furnish power for the use of the lessees in the operation of that particular pumping plant. He did not covenant to furnish or maintain a pumping plant of sufficient size to irrigate all or any portion of the land as was done in the Henika case. Respondents also cite *Greathouse* v. *Daleno*, 57 Cal. App. 187 [206 Pac. 1019], where the court admitted parol evidence of an independent agreement upon the part of the owner of the land to remove trees from his land prior to the execution of an agreement for the leveling and grading of the land. The evidence was admitted under the well-known exception to the general rule that where the subject matter of the parol agreement is distinct from that to which the writing relates and the writing itself is silent on that matter the agreement may be shown by parol particularly when it does not alter or vary the terms of the written contract.

A case more closely in point is *Ayers* v. *Southern Pac. Co.*, 173 Cal. 74 [L. R. A. 1917F, 949, 159 Pac. 144]. The defendant had subdivided a tract of land to be sold in lots for a town site. The plaintiff purchased lots from the de-

fendant under a deed containing a covenant that no intoxicating liquor should be sold or given away on the premises. After she had erected a hotel on the premises other lots were sold, all containing the same covenant, but the purchasers of these lots erected saloons on their lots and sold intoxicating liquors in violation of their covenants. The defendant refused to enforce the covenants and the plaintiff sued for damages. The trial court admitted evidence of oral representations made to plaintiff, as an inducement to her purchase, tending to show that the defendant promised that no intoxicating liquor would ever be sold or given away upon any of the lots sold. In reversing the trial court the supreme court held that these representations did not amount to a contract of warranty, but were merely matter of opinion or prophecy, and, in the absence of an allegation of fraud, or that they were false, they were not actionable. On the question of the admissibility of the parol evidence, the court said:

"The so-called agreement that sales of liquor should never take place in Moron was essentially a warranty regarding the permanent advantages of the property sold. Such a warranty, if made, would be a part of the contract of sale and not collateral thereto. To justify the admission of parol evidence of a contract between parties who have made an agreement in writing, on the ground that it is collateral, it must be upon a subject distinct from that to which the writing relates. (*Germain Fruit Co.* v. *J. K. Armsby Co.,* 153 Cal. 594 [96 Pac. 319].) Here the written agreement itself speaks on the subject of the sale of intoxicating liquors, and provides that none shall ever be sold on the premises described. To add to this provision the further stipulation that none should ever be sold in the entire town of Moron, and that the railroad company should see that none was ever sold there, would be to add by parol to a written agreement which on its face purports to be complete upon that subject, and which, under section 1856, is presumed to embrace all the terms agreed on. Such evidence is inadmissible."

One of the well-known exceptions to the parol evidence rule is that such evidence is admissible where the terms of the instrument are sufficiently uncertain to leave the intention of the parties in doubt. It is argued by

the respondents that the parol evidence in this case was admissible under this theory. In support of the argument it is said that the term "pumping plant now being installed" is uncertain and unintelligible and that to explain its meaning it is proper to show that the appellant covenanted to furnish water from this particular well upon which the pumping plant was being installed sufficient to irrigate the entire one hundred and twenty acres and to bring the cotton crop planted thereon to full maturity. We are unable to perceive any uncertainty in the language of the lease. The lessor obligated himself to give the lessees the use of a particular pumping plant—the one which was then being installed upon the premises, and he also undertook to pay all charges for power to operate that particular pumping plant. There is nothing in this language which justifies an interpretation that by leasing the pumping plant the lessor undertook to guarantee any particular quantity of water. It might as well be said that in leasing the land he warranted it to be suitable for the raising of a particular quantity of cotton; that in agreeing to furnish the cotton-seed he warranted its quality or the crop which it should produce; that in giving the lessees the use of the buildings and corrals he meant to furnish the buildings for living purposes or to fill the corrals with livestock.

Aside from the question of the admissibility of the evidence, it wholly fails to establish the covenant upon which the respondents recovered. By the verdict they were given the full amount which it was estimated they would have received from the sale of one-half of the cotton crop if the land had produced at its maximum capacity. The evidence shows without conflict that all the conversations relating to the water occurred long prior to the execution of the lease and at a time when the respondents were operating under a lease given to George and Griffin. The evidence is also without conflict that the parties to the original lease made no engagements as to the amount of water to be supplied from the well, but, on the contrary, it was shown in the testimony of the witness George that this factor was intentionally omitted from their lease because it was not customary in that locality to require the lessor to guarantee any certain amount of water in a lease of that character. It also appears that during all of this period

when these conversations were had neither the appellant nor the respondents had in contemplation the execution of a lease between themselves. Thus if a covenant to furnish sufficient water to bring the cotton crop to maturity can be implied from any of these conversations, it was a covenant which would have inured to the benefit of the lessees, George and Griffin, and not to the respondents herein. But there is nothing in the evidence which warrants an inference that such a covenant was intended by either party. The most that this evidence does show is an independent contract wherein the appellant agreed that if sufficient water was not developed from the well he would pay the respondents for the work which they had expended upon the premises. If the extent of the agreement as shown in these conversations was that the lessor should pay the lessees for their labor if the water failed, then their measure of recovery is not that represented in the judgment, and the record fails to contain any competent evidence to support a judgment upon the obligation pleaded. We do not deem it necessary to consider the other errors assigned.

Judgment reversed.

Koford, P. J., and Sturtevant, J., concurred.