[Civ. No. 4811. Fourth Dist. Sept. 28, 1953.]

JOSEPH J. FEDELE, Respondent, v. ROBERT J. DOWLING, JR., Appellant.

Woodrow Wilson for Appellant.

Johnson & Johnson for Respondent.

GRIFFIN, Acting P. J. — Plaintiff's original complaint sought judgment for $8,533, plus interest against defendant and appellant for breach of an oral agreement to purchase plaintiff's interest in the D. G. Granite Business owned by plaintiff and Paul E. Burton. Defendant answered and claimed that the agreement was in writing and according to its interpretation the sale was made upon different terms from those alleged in the complaint.

During the course of trial the court suggested that plaintiff amend his complaint to conform to the proof. The amendment was made where in one cause of action plaintiff sought to recover $8,000 on the breach of a claimed oral agreement to sell. In a second cause of action he sought to recover $1,100, claimed to be due for unpaid labor claims payable under some oral agreement, which agreement was confirmed by a written agreement. In a third cause of action plaintiff claimed there was a written agreement by defendant to pay $7,500, less the amount of certain repair bills agreed upon, for the interest in the business, as well as $1,100 wages which the parties agreed were due. The fourth cause of action was for $8,000, excluding the repair bills and wage claims, predicated upon a contract entered into by mutual mistake, in which reformation of the contract is sought. In a fifth cause of action declaratory relief is sought declaring the respective rights of the parties. Copies of the writings are attached to the amended complaint.

After plaintiff rested and during the production of defendant's evidence, defendant sought to have his answer amended to show claimed fraud and misrepresentation on the part of the plaintiff relating to the amount of the repair bills. The motion was granted but it does not appear that such

an amendment was filed. The court entered judgment for $8,770 plus interest, and defendant appealed.

The evidence shows that plaintiff and Burton were co-partners doing a granite business under the name of Hilldale Trucking Company upon property leased from one Kelly Yount.

The granite company owned certain equipment used in the business which was subject to certain purchase liens amounting to $2,867. Plaintiff decided to sell his interest in the business in which he claimed he had an $8,000 investment. It is plaintiff's testimony that early in August, 1951, in response to an ad, defendant orally agreed and arranged to purchase the interest of plaintiff for $8,000, but defendant did not appear at the escrow office the next day; that about two weeks later the parties again met in an attorney's office with Mr. Yount and the deal was outlined. On August 18, 1951, defendant, Burton, Yount and others met at the partnership office and defendant presented a typewritten proposal (Exhibit B) which he had prepared and in which it is stated: "I propose to buy the D. G. Business . . ." on certain conditions, one, to place $100 in escrow; two, defendant to take possession on August 20th, and Burton to give clear title to equipment (listing it). Then follows a notation written in green ink: "Title to pass at once." Then follows a sentence: "Including repair bills past and to put in running condition," with a line drawn through this sentence with green ink. Then follows the typed statement: "I will pay . . . Fedeli $7500.00 less that amount of money necessary to clear the above equipment including the current and past repair bills. . . . Mr. Yount will furnish me a lease, immediately, on the entire set-up, Mr. Burton having signed off his lease to Mr. Yount." The lease was to run for five years at $500 per month, starting September 1, 1951, with an option to purchase, Yount to underwrite the operation to the extent that if the business did not show a net profit of $1,500 per month for the first six months Yount was to give one year free rent. This exhibit is signed by Yount, and Burton and contains some pencil notations which the several parties endeavored orally to interpret to the court, but they did not agree upon their meaning.

At the same time Burton and Yount signed a receipt written in green ink and prepared by defendant, reciting: "Received from . . . Dowling . . . $100.00 which is deposit

. . . for the purchase of D. P. Granite Business . . . **and to include lease on entire Hilldale Granite Pit.** . . . Deal **as per** copy attached. Possession as of close of business 8/18/51." Then on a separate paper, written and signed by defendant (Exhibit 3) he recites: "In connection with purchase of D. P. Granite Business from Paul Burton I agree to pay bal. due on" the described equipment, and "wages due" to certain named individuals "when title to above equipment passes into my hands. Wages not to exceed $1100.00."

Plaintiff's evidence shows that defendant, at the time of the signing of these documents, orally agreed to pay the $7,500, plus $500, which was the amount then shown to have been paid by plaintiff to Burton, totaling $8,000, which sum plaintiff claimed he had invested in the business. The evidence further shows that defendant, in addition, was to pay the repair bills and labor claims indicated. It is claimed by plaintiff that Exhibit 3 was executed when the defendant orally agreed to pay additional money over and above that proposed in Exhibit B.

Defendant offered in evidence a typewritten copy of his proposal (Exhibit C) on which the deposit figure of $100 had been changed to "$4000." The notation "title to pass at once" was not inserted on it. No green ink line had been drawn through the sentence pertaining to repair bills as above indicated in Exhibit B, but a black ink line struck out the line: "less that amount of money necessary to clear the above equipment including the current and past repair bills." It is defendant's position that this writing, without the modifications, was the ultimate contract agreed upon; that the $4,000 escrow deposit was to include the repair and labor items, and that any claimed balance due included payments due on equipment and that the total due under the contract amounted to no more than $3,802.39, payable when clear title was furnished to defendant.

It appears that defendant took possession of the business the day following the agreement entered into on August 18th, and was furnished a lease by Yount; that he continued to operate the business; that he did not pay the $1,100 labor claim agreed upon; that plaintiff was compelled to pay this amount for defendant; that defendant did pay $2,867 liens on the equipment and then immediately sold and disposed of a major portion of it and repurchased other equipment. Apparently there was a claimed violation of the lease from Yount to defendant on the part of defendant. No money

was paid on it under the claim that defendant had not realized $1,500 per month net profit from the business, or that defendant exercised the option to purchase the property under its terms. Yount padlocked the premises. Defendant brought an action against him for specific performance and obtained a temporary restraining order. That action is still pending.

It appears that the State Board of Equalization made a claim for sales tax on the transaction, for $2,273.22. A balance due of $300 on a United States government lien was paid by plaintiff during the course of trial. Defendant has paid nothing further to plaintiff since taking possession of the property and continually refuses to pay. This action followed. After trial the court found generally in favor of plaintiff's interpretation of the oral agreement, as supported in part by the writings in evidence.

It was stipulated that the State of California, in behalf of the Director of Employment, would have a lien of $326.78 upon any judgment recovered by plaintiff. It was further ordered that the lien of the State Board of Equalization be paid by plaintiff, and if paid by defendant he would be entitled to a credit for said amount.

Predicated upon the court's oral opinion set forth in the transcript, it considered the complaint as one cause of action and concluded that the written documents in evidence contained extrinsic ambiguities, were sufficiently uncertain to leave the intention of the parties in doubt, and were of such a nature as not to constitute the entire agreement between the parties, and accordingly it accepted the oral agreement established by the evidence and allowed the writings in evidence to assist it in determining what the ultimate agreement between the parties was when defendant took possession of the property.

From a reading of the instruments it does appear that the ruling of the trial court in this respect was justified, and it is apparent that the parties did not intend the execution of the various writings to be a complete and final statement of the whole transaction.

Defendant's argument that the court improperly permitted parol evidence to vary the terms of a written agreement is without merit. ██ The exclusionary aspect of the parol evidence rule comes into operation when the parties have adopted a writing or writings as a single, final and complete expression of their understanding. It is where there has

been an integration whereby all prior and contemporaneous negotiations are superseded by the writing or writings that the parol evidence rule is applicable. (*Estate of Gaines,* 15 Cal.2d 255 [100 P.2d 1055]; Code Civ. Proc., § 1856; *Morgan* v. *Green,* 86 Cal.App. 216 [260 P. 596]; *Laughlin* v. *Haberfelde,* 72 Cal.App.2d 780 [165 P.2d 544]; 4 Cal.Jur. 10-Yr. Supp. (1943 Rev.) 146, § 192; 6 Cal.Jur. p. 227, § 150; *George Herz & Co.* v. *Solt,* 23 Cal.App.2d 178 [72 P.2d 251]; *Witherow* v. *United American Ins. Co.,* 101 Cal.App. 334 [281 P. 668]; *Wakefield* v. *Wakefield,* 37 Cal.App.2d 648 [99 P.2d 1105]; *Symonds* v. *Sherman,* 219 Cal. 249 [26 P.2d 293].)

Defendant next contends the purchase price should be $7,500 instead of $8,000. Plaintiff testified he had $8,000 in the business and wanted to have that amount returned to him and so informed defendant. His testimony is corroborated by other witnesses. Defendant fixed the price of $7,500 in the writing, and admits there was a conversation about an extra $500 he had overlooked, but stated this $500 was to be discussed at some other time and that he never expressly agreed to pay that additional amount. However, he did state that he agreed that ''it was possible'' he said when the deal got into its final form he would change the $7,500 to $8,000. The finding of the trial court in this respect is fully supported.

The next argument is that the trial court erred in failing to allow as a credit on the purchase price the payment of the sum of $2,867 made by defendant, being the balance due on the contract for the sale of the equipment to plaintiff. Plaintiff's Exhibit 1 clearly indicates that this amount, as well as the past repair bills, were to be deducted from the $7,500 purchase price. The writings are confusing as to whether this amount was to be allowed as a reduction of the purchase price or whether defendant was to pay this item in addition to it. According to the oral decision of the trial judge it was called to his attention that it was stipulated that this item had been paid by the defendant and it was argued that the defendant should be allowed this credit on the judgment for the purchase price. Apparently the oral decision did not dispose of this issue. There was oral testimony to the effect that defendant was to pay any indebtedness due on the equipment over and above the sum agreed to be paid to plaintiff upon the contract price, including the labor claim. The agreement dated August 18,

1951 (Exhibit 3) signed by defendant, specifically states: "I agree to pay bal. due on" the equipment. There is nothing there indicating that said payment should be allowed as payment on the purchase price of the granite business. Apparently, in the ultimate signed findings, the court made no mention of this particular credit but did specify the credits it did allow, and found an amount due which in effect disallowed this item as a credit. The fact that the trial court intentionally disallowed this item as a credit and believed that the oral agreement did not provide for such a credit is strengthened by the reasoning expressed in the oral opinion regarding the testimony surrounding the proposed written agreement (Exhibit 5) which was prepared on September 5, 1951, and signed by Fedele and Burton in an attempt to settle the differences existing between the parties.

The evidence in this respect is that on September 22d, the attorney for plaintiff phoned defendant and discussed with him possible terms that could be agreed upon; that he suggested to defendant a $2,000 down payment, plus the labor claims agreed upon, totaling about $1,000 and payments of $300 per month for six months and thereafter $500 per month until a total of $9,031 was paid; that defendant stated he was agreeable to that arrangement but wanted some protection with reference to possible creditors; that he suggested to defendant that the granite company's accounts receivable be held in trust for this purpose and the company would also post a bond to this effect; that this provision was also acceptable to him and to draw up an agreement to this effect. Such an agreement was drawn and it also contained a provision that defendant "assumes and agrees to pay all encumbrances upon the rolling equipment hereinbefore mentioned."

The following day, in the presence of Yount, Fedele and others, Dowling read the proposed agreement and, according to the witnesses, said: "I have no doubt that this is the deal, but I was supposed to have a period of time of 60 days or something like that within which to raise the down payment. I don't have it at this time. I have a business in escrow that hasn't closed yet and I need more time"; that he was asked if the terms of the agreement were satisfactory and he said that they were; that Dowling refused to sign it for the reasons stated by him and not because of any added provision regarding the payment of encumbrances.

Defendant was examined in connection with this conversation and his answers were quite evasive. He claimed he did not recall the statements made by him but he would not deny making the statement as to a new arrangement to pay $3,000 down and $300 per month for the first six months and $500 per month thereafter. He admitted seeing the proposed agreement (Exhibit 5); that they discussed the terms but he did not remember what they were; and that he "thoroughly understood that Mr. Fedele wanted $8,000 out of the business."

The exhibit and the evidence pertaining to it were properly received and considered as evidence bearing on the question of the intent of the parties. Accordingly, there is evidence that would support the ultimate findings, which are controlling (*Colver* v. *W. B. Scarborough Co.,* 73 Cal.App. 421, 434 [238 P. 1096]) and support the judgment in the full amount allowed. A motion for new trial was fully argued and no doubt this claimed error was or should have been presented to the trial court for correction if it so intended. The motion was denied and we must assume that the court did not intend to allow this item as a credit although the evidence might have supported a contrary version.

The last argument is that defendant was justified in failing to pay the purchase price under his agreement because plaintiff did not furnish clear title to the equipment in that there was a sales tax due from the sale of the equipment to defendant. There is no merit to this argument. Defendant did obtain the title to the equipment and in fact sold it. Plaintiff states that if defendant had paid any portion of the purchase money agreed upon he would have been able to pay the tax due from the sale of the equipment.

No error appears in the allowed amendment to plaintiff's complaint and it does not appear that defendant was "denied due process of law," as indicated in his brief. (*Peters* v. *Binnard,* 219 Cal. 141 [25 P.2d 834]; *Klopstock* v. *Superior Court,* 17 Cal.2d 13 [108 P.2d 906, 135 A.L.R. 318].)

Judgment affirmed.

Mussell, J., concurred.